## John Bt. Bomier vs. Thomas Caldwell.

When it appeared that A. agreed to purchase of B. a certain tract of land and pay $150 for the same; that at the time of the agreement, A. paid B. $80; that B. surveyed the land and put A. in possession; that A. had resided on the land for several years, and made improvements to the value of from $200 to $500; *held* that these were such acts of part performance as to take the case out of the statute of frauds, and to authorize a decree for a specific performance to convey, upon payment of the balance of the purchase money with interest.

First Circuit.

Bomier
*vs.*
Caldwell.

The bill in this case was filed for a specific performance of a parole contract to convey land.

The bill states that some time in the year 1830, the complainant and defendant entered into an agreement, in and by which agreement the defendant sold to the complainant a certain tract of land situated on Otter creek, in the county of Monroe, being three arpents in front and twenty-five in depth, in consideration of which, the complainant was to pay $150; $80 of this sum was to be paid immediately in cattle, and the balance in the three years thereafter; that it was understood by the parties that if the complainant found it inconvenient to pay the balance in three years, that then, and in such case, the said defendant was to give further time, and would receive, instead of money, cattle or grain, as might suit the convenience of the complainant.

The bill further states, that the agreement was not reduced to writing, the complainant having full confidence in the integrity of the defendant; that the defendant caused a survey of the land in question to be made, and put the complainant in the full possession thereof, which possession the complainant has ever since held, and paid the taxes thereon; that the complainant pursuant to said agreement, did deliver to the defendant, cattle valued at $80; that on the 10th day of July, 1835, the complainant tendered to the defendant, the sum of $94 50, being the balance of the consideration money and interest, which he refused to accept.

The answer denies making the agreement set out in the bill, but admits that an agreement was made, in substance, as follows:

The defendant agreed to sell the land in question, to the complainant, for the sum of either three or two dollars per acre; the defendant further admits, that he does not recollect whether the complainant was to pay two or three dollars per acre; and further, that the defendant was to receive $80 in cattle from the complainant, in part payment, upon the delivery of possession of said land; the defendant further states, that the complainant further agreed to deliver to the defendant during the fall next succeeding, a certain yoke of oxen as a further payment, and the balance in three years, with interest, and also to pay the taxes on said land, and on two other tracts which the defendant owned.

The defendant denies that he agreed to give further time after the expiration of said three years, to pay the balance of the consideration money, should the complainant find it inconvenient to pay such balance, or receive grain instead of money, or any other cattle than the yoke of oxen which the defendant avers the complainant was to deliver in the fall; the defendant further states, that it was understood between the parties, that a bond for a deed was to be given to the complainant upon receiving the said yoke of oxen, and a deed upon the payment of the whole amount agreed to be paid.

The defendant admits that in the fall of 1835, the complainant called upon him, and said that he was ready to pay the amount due for the purchase of the said tract of land, &c., and further, admits that the complainant asked him, the defendant, to receive the balance due, which the complainant said he then had in money, &c.

Whipple and Vandyke, for complainant.

F. Johnson, for defendant.

The Chancellor.—From the testimony, there can be no doubt that the agreement between the parties was substantially as stated in the bill.

By the testimony in the case, it appears that the price to be paid by the complainant for the land was $150; that $80 was

paid down, leaving only a balance of $70 due; that the land was surveyed by defendant, and that he put the complainant in possession. It further appears the complainant has resided on the land ever since, and that he has built an addition to the house; has cleared, fenced and improved some twenty-five acres of land, and set out an orchard. The improvements are estimated by the witnesses from $200 to $500.

The payment of so considerable a portion of the purchase money; the being placed in possession by the defendant, and the long occupation by the complainant, and valuable improvements made by him on the premises, are such acts of part performance as to take the case out of the statute of frauds.

It is next to be considered whether there has been such a neglect to perform the conditions of the contract, on the part of the complainant, as to preclude him from relief in this court.

There is some discrepancy between the answer and the testimony as to what the precise terms of the agreement were.

The witnesses Lavigne and Antaillaird, both state that the agreement was, that after the payment of $80, the defendant was to give the complainant three years to pay the balance, and that if the defendant was not then able to pay, he would give him a longer time and would not trouble him. The defendant, in his answer, says the complainant was to have delivered to him another yoke of oxen in the fall, and that then he was to have three years to pay the balance. He further says, his object in selling the land was to obtain the oxen in the fall, and also because he should want money at the end of three years.

It is conclusively established that the price to be paid for the land was $150, and that $80 was paid down, and that the balance due was but $70. Now if the oxen had been delivered in the fall, at $50, there would have been but $20 remaining.

It seems somewhat strange that the defendant, (who is a man of wealth, as appears,) should let either the one or the other of these objects form the inducement to the sale.

From a view of the whole case, I am led to the conclusion

that this matter of the delivery of the oxen in the fall did not form any part of the original contract, and that this matter is improperly blended with the agreement set up in the answer. It seems incredible that three years' time should have been given to pay the $20, with the assurance that, if it should become necessary, the time should be further extended.

The defendant states in his answer, that he does not remember whether the price of the land was $150 or $225. Now, if he cannot remember what the price of the land was, it may be presumed, without any imputation of intentional misstatement, that he may have, so far, at least, forgotten its details as to have mingled that which was a matter of subsequent conversation, with the original agreement. Three witnesses concur in their statements with regard to the price to be paid for the land, and as to the terms of agreement between the parties, and this statement of the agreement which is given by the witnesses, was made by the parties about the time the same was made, and when it was fresh in the recollection of both the complainant and the defendant. The terms of the agreement were simple and easily understood, and the witnessess all concur that $150 was to be paid for the land, $80 of which paid down; the balance to be paid within three years; that the complainant stated at the same time that from the relation which existed between him and defendant, that if defendant could not pay him the balance at the end of the three years, that he would not trouble the defendant, but would give him further time. Can this be reconciled at all with the fact that the balance was only $20 ? There can be but little doubt that the witnesses state the contract correctly, and that this agreement to deliver the cattle in the fall, and to pay taxes, was in pursuance of the agreement that the defendant would receive cattle or grain for the balance. This is perfectly consistent with the conversation between the complainant and the defendant, mentioned by Le Duc, in his testimony, and in no other way can the whole of the testimony be reconciled.

When the defendant said to the complainant, you did not bring the oxen, the complainant replied, by way of apology,

that one of them had died; and this conversation is perfectly consistent with the testimony of the three witnesses first named. In their statement of the agreement, there appears to have been no condition that the complainant was to deliver to the defendant a pair of oxen, as stated in the answer. This must have been a matter of a subsequent conversation, and in no other way can it be reconciled, either with the testimony or the other facts in the case.

But even supposing this condition had made a part of the original agreement under the facts in the case, this court would hesitate much before it would refuse relief to the complainant.

Here the excuse for the non-delivery of the oxen, was, that one of the oxen died before the time they were to have been delivered; the defendant permitted the complainant to remain in possession, without taking any steps to rescind the agreement, until 1835, and permitted him to go on uninterrupted to make valuable and permanent improvements on the premises. This case, in itself, is not of great importance, but it is important to the complainant, as it involves the labor of many years. I cannot well conceive of a case which would call more strongly upon the court to decree a specific performance of a contract, on the ground of part performance, than this;(1) the tender on the part of the complainant was sufficient under the circumstances. It was an offer to pay the balance, which was refused by the defendant.

The complainant must have a decree for a specific performance, upon payment of the balance due, with interest.

(1) See *Burtch* vs. *Hogge*, *ante* 31, and notes 1 and 2.