MEEKER *against* MEEKER and others:

### IN ERROR.

*Fairfield,*
June, 1844.

Meeker
*v.*
Meeker.

16 | 403
74 | 295

*A* being indebted to *B*, by two promissory notes, in the sum of 150 dollars, in consideration thereof, executed to him a deed purporting to convey a parcel of land, the boundaries of which were given on three sides, and extending, on the other side, so far as to embrace land sufficient to pay the sums due on such notes, at the appraisal of two disinterested men, to be thereafter appointed for that purpose. *A* soon afterwards died, without any thing further having been done, relating to the appraisal or the appointment of appraisers, leaving a large real estate, and personal estate more than enough to pay all his debts. *B*, retaining the notes, then brought a bill in chancery against the heirs of *A*, praying the court to ascertain the quantity of land necessary to pay the notes, and set it off to him in payment. Held, that *B* was not entitled to the relief sought; no reason being shown why payment of the notes in money would not be as beneficial to him, as payment in land at the appraisal of men.

The specific execution of a contract is not a matter of right; but an application for that purpose, is addressed to the discretion of the court, to be exercised not in an arbitrary and capricious manner, but in conformity with the established rules of equity; according to which the court will not interfere, in this manner, unless the legal remedy is inadequate or defective.

THIS was a bill in chancery, brought originally to the county court, for the specific performance of an agreement.

The facts found by the court present the following case. On the 16th of *April*, 1842, *Azariah Meeker*, then in full life, since deceased, was justly indebted to the plaintiff, by two promissory notes, *viz.* one dated the 25th of *June*, 1835, for the sum of 100 dollars, the other dated the 16th of *April*, 1842, for the sum of 50 dollars, both payable on demand, with interest; and being so indebted, and being desirous of making payment of said notes, he, by his deed dated said 16th of *April*, conveyed to the plaintiff, in payment of said notes, a certain tract of land lying in *Reading*, bounded *Easterly* on land conveyed to the plaintiff, *Southerly* on land of the heirs of *Seth Meeker*, *Westerly* on *Elias Brewster's* land, and extending *Northerly* so far as to embrace land sufficient to pay and satisfy the sums due on said notes, at the appraisal of two disinterested men, to be thereafter chosen and appointed for that purpose. The deed was executed and delivered for the purpose of paying said notes, and for no

other cause or consideration; and for the same purpose, it was received by the plaintiff.

On the 20th of *April*, 1842, *Azariah Meeker* died, intestate, without having appointed or designated any persons to appraise said land, or to ascertain what quantity should be set off to the plaintiff, under the deed, in payment of said notes.

He left a widow, *Eunice Meeker*, one of the defendants, and four sons, *viz. Burr, Daniel* and *Alfred*, the other defendants, and *Harry*, the plaintiff; who are his only heirs at law, and the only persons interested in his estate. He left also a large real estate, and more than personal estate enough to pay all his debts. Administration on his estate was, by the court of probate, committed to *Thomas B. Fanton*, Esq., who caused the entire tract of land, of which that conveyed by said *Azariah* to the plaintiff forms a part, to be inventoried and appraised, as a part of said estate, denying the right of the plaintiff to any part of said tract, and refusing to adopt any measures to have any part of it set off to the plaintiff under said deed. Since the death of said *Azariah*, the plaintiff has applied to said *Burr, Daniel* and *Alfred Meeker*, to adopt measures to have said land appraised and set off to him, in conformity to the stipulations in said deed.

There was no evidence of the intent of the parties in executing and receiving said deed, except what is to be derived from the deed itself, and the delivery of it to, and the reception of it by, the grantee.

The plaintiff retained said notes in his own hands, and now has them. After the death of said *Azariah*, and within the time limited by the court of probate for the exhibition of claims against his estate, the plaintiff exhibited said notes to the administrator, and requested him to cause land to be appraised and set off to him in satisfaction thereof; which he refused and neglected to do.

Upon these facts, the county court was of opinion, that the plaintiff was not entitled to relief, and thereupon decreed, that he should take nothing by his bill, and that it should be dismissed with costs.

To revise this decision, the plaintiff thereupon brought a writ of error in the superior court; which was reserved for the consideration and advice of this court.

*Bissell*, for the plaintiff, contended, That he was entitled to the relief sought.   The deed gives an interest—an estate— but leaves its *extent* to be ascertained, by *a mode* agreed upon. The appraisers were evidently to be appointed, by the concurrence of the grantor and grantee, or by each appointing one.   The heirs of the grantor, in taking the property, take the duty with it.

The plaintiff has no possible remedy but in chancery.   The court of probate can give him none, for he holds as grantee, not as heir.   Probate cannot order a distribution ; and there can be no partition ; for the plaintiff does not claim as tenant in common.   He has a right to have the extent of land ascertained.   As the heirs refuse to appoint appraisers, it becomes the duty of chancery to ascertain the estate, *by the mode agreed on by the parties,* viz. by an appraisal.   The agreement of the parties did not so particularly regard the selection of the persons who were to make the appraisal, as the mode by which the extent was to be ascertained, *viz.* by an appraisal of the value.   The whole object of the parties will be accomplished, *and in the mode contemplated by them,* by an appraisal under the order of the court.

The principle on which the law compels the specific execution of the contract, surely authorizes all that the plaintiff calls for here : for if the court will decree the *entire execution* of a contract, *a fortiori,* it will decree the *completion* of a contract fully executed, so as to convey the estate, where nothing remains undone but the ascertainment of the extent of the land conveyed.   Chancery lends its aid in the ascertainment of boundaries ; will relieve against an omission to elect in time ; will execute an uncertain agreement, by reducing it to a certainty ; will enforce an agreement to sell at a fair valuation ; will enforce an agreement to give a lease with usual covenants.   1 *Fonb.* 43. 174. n.   *Newl. Con.* 109. 150.   1 *Mad. Ch.* 39. 178. 26. 337. 340.   *Hall* v. *Warren,* 9 *Ves.* 605.   2 *Sw. Dig.* 25.   6 *Ves.* 471.

The cases relied upon for the defendants, are *Emery* v. *Wase,* 5 *Ves.* 846. and *Milnes* v. *Gery,* 14 *Ves.* 400.   2 *Sw. Dig.* 25.   These are not at all in point.   The parties had done all they had agreed to do, and that proved ineffectual ; and as they had tried unsuccessfully the only mode agreed on, and as nothing had yet been done in execution of the contract, and no price had yet been agreed upon, the court

*Fairfield,*
June, 1844.

Meeker
*v.*
Meeker.

refused to interfere. The parties had in fact done every thing they had agreed to do; and the decision left them *in statu quo*—precisely where they were before. But here, the conveyance has been made. The defendants refused to do what was agreed to be done. Had all been done, and that had proved ineffectual, the case would be different. But even then, as the conveyance has been made, the court would adopt measures to ascertain the extent, by an appraisal. The refusal of the court to interfere would not leave us *in statu quo*. We should have a title to land, which we never could safely occupy.

Chancery relieves against *accident*. Here, the appointment of appraisers, by *Azariah Meeker*, was prevented by providence.

The whole price is here ascertained by the deed, and the land is conveyed; but its extent is uncertain. It is not at all like an application to compel a conveyance, which has not yet been made, and where no price has been fixed.

If the mode fixed for ascertaining the price, were to fail, yet if the land had been granted, it would be a case for a fair valuation by the court.

*Butler*, for the defendants, contended, 1. That if this is to be regarded as an *executed* contract, it is void for uncertainty. It is not a case of uncertain boundary merely, but of an uncertain *quantity*: it is uncertain *what land* is conveyed. 1 *Mad. Ch.* 426. and cases cited.

2. That the contract is in fact *executory*. In the first place, the notes are unpaid, and in the hands of the plaintiff—confessedly unsatisfied. The land is *to be* appraised and set off sufficiently far *North* to pay them. The persons to do this are hereafter to be chosen; and until they are chosen and act, no payment is made, and no legal ascertainment is had. Secondly, it is an engagement to refer to arbitration. Its language substantially is, " I covenant and agree, that you shall have land on the *North* of the tract, sufficient to pay the notes; but how much—*i. e. what land*—we will submit to two disinterested men, to be hereafter chosen by us, to say." But a reference to arbitration, cannot be specifically enforced. 1 *Mad. Ch.* 404. 426. and cases cited. *Blundell* v. *Brettargh,* 17 *Ves.* 241, 2. *Emery* v. *Wase,* 5 *Ves.* 846. *Milnes* v. *Gery,* 14

*Ves.* 400. *Gourley* v. *The Duke of Somerset,* 19 *Ves.* 431. *Mitchell* v. *Harris,* 2 *Ves.* 132. 2 *Sw. Dig.* 25. Thirdly, the application is based upon the idea that the contract is executory.

3. That there is no imperfection or error in the finding, which can be a ground of reversal.

**WAITE, J.** From the facts found by the county court in this case, it appears, that *Azariah Meeker,* being indebted to the plaintiff, by two promissory notes, in the sum of one hundred and fifty dollars, exclusive of interest, in consideration thereof, executed to him a certain deed, purporting to convey to the plaintiff a certain tract of land, situated in the town of *Reading,* which should be sufficient to pay those notes, on the appraisal of two disinterested men to be thereafter chosen and appointed. The quantity of land was not given. The boundaries were designated upon three sides ; and upon the fourth side, the land was to extend so far as should be sufficient to pay the sums due on those two notes. The debtor soon afterwards died, and nothing further was done by the parties, during his life-time, relating to the appraisal, or the appointment of the appraisers. The plaintiff brought his suit against the widow and heirs of *Azariah Meeker,* praying the court to ascertain the quantity of land necessary to pay those notes, and set off the same to him in payment. Upon these facts, the county court dismissed the plaintiff's bill ; and the case is now brought before us for a revision of that decision.

It is not necessary for us to inquire, whether under any circumstances, such an agreement could not be specifically enforced :—as if, for example, the plaintiff, after the delivery of the deed to him, had taken possession of the land,—made great and substantial improvements,—and erected a dwelling-house and other buildings thereon,—the grantor standing by, and making no objections. In such a case, a refusal to fulfil the agreement, might be attended with great and irreparable injury to the plaintiff. Even relief in such a case, by a specific execution of the agreement, would be a great exercise of power, by a court of chancery, for which, it would be somewhat difficult to find a precedent.

But no such circumstances are presented in this case. It is not even alleged in the bill, that the plaintiff has ever taken any possession of the lands described in the deed. No ap-

praisal has ever been made, and no appraisers designated. The plaintiff still retains his notes, and has exhibited them as a claim against the estate of the deceased. No reason is shown, why payment of these notes in money would not be as beneficial to the plaintiff, as payment in land, at the appraisal of men. Indeed, the very contract is for the payment of these notes.

The specific execution of a contract, is not a matter of right. The application for that purpose, is addressed to the discretion of the court, not indeed to be exercised in an arbitrary or capricious manner, but in conformity with the established rules of equity. A court will not interfere in this manner, unless the legal remedy is inadequate or defective. And what is there in this case showing that payment of the notes in money, will not be an adequate remedy?

There are indeed cases where agreements to sell at a valuation, have been enforced. Ordinarily, however, a court of chancery will not interfere to enforce specifically an agreement to refer a matter to arbitration. And even where an agreement has been made to sell at the appraisal of a third person, and the appraisal has been made, a court of chancery is very cautious in enforcing the specific execution of the contract. *Emery* v. *Wase,* 5 *Ves.* 846. 849.

Here, no valuation has been made, and no persons designated to make it. The contract provides, that it shall be made by disinterested men, to be thereafter chosen and appointed. To compel these defendants to execute this contract according to the terms of it, and agree with the plaintiff in the appointment of appraisers, would be an exceedingly inconvenient exercise of power, for which no precedent can be shown.

To depart from the terms of the contract and ascertain the value of the land and the quantity necessary for the payment of the debt, in a manner different from that agreed upon by the parties, and in effect to change their contract, would require a very strong case on the part of the plaintiff. We do not say, that, under any circumstances, it may not be done; but we are satisfied, that the case presented does not justify this very extraordinary exercise of power. If parties will voluntarily enter into such loose and imperfect contracts, they must seek their redress for a violation of them, in the ordina-

ry course of law, unless in cases where great injustice would be done, without relief in chancery.

We think the county court did not err, in dismissing the plaintiff's suit.

In this opinion the other Judges concurred.

Decree to be affirmed.