## DANIEL C. GODWIN,

### *vs.*

## STEPHEN M. COLLINS.

### *Kent, March T. 1868.*

A specific performance will not be decreed of an agreement in writing for the sale of land, under which one-half of the purchase money was to be paid by the purchaser upon the delivery of possession of the premises, and the balance in instalments of five hundred dollars each, payable with interest, annually, commencing January 1st, 1868, there being no provision for securing such deferred payments, notwithstanding, the complainant tenders one-half the purchase money on the day appointed, and his bond and mortgage of the premises for the deferred payments, as stipulated, and in his bill submits himself to the order and direction of the Court in that particular.

A provision for securing deferred payments may not be technically one of the constituents of a contract in its legal definition, but it is a very material ingredient in considering the question of the fair and equal operation of the contract, and such provisions not having been waived, but its necessity inadvertently overlooked, the contract being in that particular immature, a court of equity, exercising that discretion which appertains to its jurisdiction for specific performance, ought not to execute the contract according to its terms, and it has not the power to supplement the contract, by prescribing some mode of security which the parties have not, themselves, stipulated for.

The vendor's equitable lien for the unpaid purchase money would be, at best, but a very imperfect and inadequate security, and, indeed, it is in doubt whether the vendor's lien is recognized in this State, the necessity for it having been superseded and the policy of our law being against liens not of record.

It is the established doctrine of courts of equity that a decree for the specific performance of a contract of sale is not a matter of course, but rests entirely in the discretion of the Court upon a view of all the circumstances.

The limit of the discretion exercised by the Court in such cases is that it must necessarily judge whether, under the circumstances of the case, the contract is or is not an inequitable one. That being determined, judicial discretion ceases, and then, and not before, supposing the contract to have been entered into by a competent party and to be in its nature and circumstances unobjectionable, specific performance becomes a matter of course.

BILL FOR SPECIFIC PERFORMANCE.—The bill was filed to obtain a specific performance of a written agreement made by the defendant for the sale, to the complainant, of a farm then owned and occupied by the former. The only written evidence of the agreement, as set forth in the bill, was a receipt under seal, as follows :—

Rec'd Aug. 20, '66, of D. C. Godwin Ten Dolls. in part payment of the purchase money of the farm and premises where I now live, containing sixty-six acres, possession to be given on or before Jan. 1., 1867, clear of all taxes or incumbrances whatever, four thousand dolls. to be paid when possession given, the remainder in instalments of $500 each, payable with interest annually, commencing Jan. 1, 1868, the said Godwin, to have the privilege of anticipating the deferred payment—Witness my hand and seal.

S. M. COLLINS    { SEAL. }

the whole purchase money to be eight thousand dollars.
$8000                 S. M. COLLINS.

Several grounds of defense were taken in the answer, but the view of the case taken by the Court, and upon which the decree rested, renders it unnecessary to set forth the statements of the bill and answer, or the depositions.

*Comegys*, for the complainant.

The jurisdiction here invoked is very ancient. It goes back to decisions and practice four hundred years ago, and is supposed, by some judges, to have existed *ab initio*. It is likewise a very beneficial jurisdiction resting upon strictly just principles and its propriety was never questioned. It is not derived from the civil law, but was of English origin, and was not founded upon statute. The origin and object of the jurisdiction are clearly stated in the authorities. 3 *Pars. on Cont.* 350 ; 1 *Fonbl. Eq.* 27—8 ; *Lumley vs. Wagner*, 1 *DeG., M. and G.* 604, 619. *and* 13 *E. L. and Eq.* 557 ; *Mitf. Eq. Pl.* 96 ; *Alley. vs. Deschamps*, 13 *Ves* 228 ; *Halsey vs. Grant, Ib.* 76 ; *French v. Macale*, 2 *Dru. and War.* 272.

Undoubtedly the exercise of the jurisdiction rests in the discretion of the Court. But the discretion is judicial and not arbitrary. If the parties are competent and the contract unobjectionable it is as much of course to decree performance in equity as to give damages at law. *Hall vs. Warren*, 9 *Ves.* 608 ; *Flint vs. Brandon*, 8 *Ves.* 159 ; *Lennon vs. Nopper*, 2 *Sch. & Lef.* 682 ; 3 *Pars. on Cont.* 355.

In the present case we are remediless otherwise, since the case does not admit of adequate damages at law. Damages must be the " natural and proximate conse- " quences." 2 *Gr. on Ev. sec.* 256. And damages for the non-conveyance of land are measured by the value at the time of the breach, nothing else. *Sedg. on Dam.* 192 *note* 1.

Such damages would not make up the losses suffered in this case, such as the desire for this particular place, its suitableness for the future residence of complainant's family, and convenience to his business, the derangement of his matured plans and chagrin under the disappointment occasioned by the defendant.

The exception to the rule that performance will be

decreed is, when, from the nature of the contract, there is no value in it but such as damages would compensate.

There is nothing in the circumstances of this case which makes it improper to grant the relief. The distinction between contracts for sale of land and personalty, is in our favor, the former being usually enforced, the latter not ; because breach of the former is not to be compensated, adequately, in damages.    3 *Pars. on Cont.* 364-5.

The influence of Godwin, invoked by way of defense, rests upon the proof of a single conversation in which complainant advised defendant to sell his farm    It was nothing more than is usual in the common course of such negotiations, and argues no fraud. Collins' purpose to sell, without respect to the influence of Godwin, was clearly shewn by the evidence. The defense that the farm was purchased with the money of defendant's wife, would entail such consequences as to destroy confidence in all sales of land, and to make all such dealings unsafe. But the claim is only that the farm was purchased with the proceeds of the sale of the farm belonging to her. If this be true, which we deny, still, this Court has no power over those proceeds, and no equity whatever attaches to them, as it does, for example, when a husband applies to a court of equity for aid to recover the wife's property. *Clancy on M. W.* 441-2 ; 2 *Kent Com.* 141.

But it is objected that the contract is defective for uncertainty, in not shewing how the balance of the purchase money is to be secured.

The law fixes terms when the contract does not, viz ; that the vendor shall have a lien as between the parties. A specific mode of security is not essential to the contract, even though usual. Any special security becomes a mere substitute for the equitable vendor's lien. The mode of security need not be specified, but the Court may see to it that the party is made secure, and to this we submit ourselves. *Young vs. Paul*, 2 *Stockt. N. J. Eq.* 402.

But such an objection is avoided by our tender of security in accordance with the actual stipulation of the parties, as stated by the complainant, January 1st, 1867, and not objected to. The tendered mortgage would have been a good security, operating by way of estoppel.

The defense that the contract was not stamped, cannot avail, because it may be stamped before being read in evidence, and the Court would, if necessary, permit the cause to stand over that it might be done. *Sugd. on Vend.* 62. But the defendant cannot be permitted, in equity, to take advantage of his own omission to affix a stamp. And equity will enforce, when good conscience requires, a contract defective or void, at law. 3 *Pars. on Cont.* 355.

Respecting the power to compel execution by the wife,—if she has an equitable estate, she may be compelled to join under her own contract. If she has a legal estate, she cannot be compelled even under the most solemn contract. If the husband covenants to procure her joinder in a conveyance of his legal estate, he might, formerly, be decreed to procure it, subject to be attached if he did not ; for it is presumed that he covenanted with her consent. This is not done now, however, and we ask no decree operating on the wife either directly or by attaching the husband.

*Ridgely* and *Watson*, for the defendant.

1. A specific performance is not a matter of right, *ex debito justitioe*, but rests in the sound discretion of the Court to be exercised upon all the circumstances of the case, and any circumstances of injustice, inequity, hardship and the like, avail as a defense. *Seymour vs. Delaney* 6, *Johns, Ch.* 222 ; *S. C.* 3 *Cow.* 445. 505. 508, 526 ; *Torrey vs. Buck*, 1 *Green's Ch.* 367, 375 ; *Ely vs. Perrine Jr. Ib.* 396, 402 ; *Meeker vs. Meeker*, 15 *Conn.* 403 ; *Tyson vs. Watts*, 1 *Md. Ch.* 13 ; *Gould's Ex'r vs. Womack*, 2 *Ala.* 83

—91 ; *Perkins vs. Wright*, 3 *Har. & McHen.* 327 ; *Leigh vs. Crump*, 1 *Ired. Eq.* 296, 302 ; *St John vs. Benedict*, 6 *Johns. Ch.* 111 ; 1 *Sto. Eq. Jur. sec.* 742, 769 ; *Radcliffe vs. Warrington*, 12 *Ves.* 331 ; *Harnett vs. Yeilding*, 2 *Sch. and Lef.* 548 ; 3 *Pars. on Cont.* 351 *note (e)* ; *Myers vs. Watson*, 7 *E. L. and E. Rep.* 69 ; *Gasque vs. Small*, 2 *Strobh. (S. C.)* 72, 77.

The complainant has not shewn a proper case even were there no defense.    The facts assumed as a proper ground of relief, are not sustained by the proof, and there is no loss incurred by the complainant which cannot be adequately compensated in damages.

2. The contract was obtained by improper means, being executed under undue haste and influence, and instantly, upon Collins' consent being obtained, drawn on the spot by the complainant himself, and executed without a witness.

Misrepresentations, though not in writing, if calculated to mislead in any thing essential, would deprive the complainant of relief, and leave him to his remedy at law. There must be, on his part, entire propriety of conduct, and any suspicion or doubt cast upon it avails as a defense. *Miller vs. Chetwood*, 1 *Green's Ch.* 199, 208 ; *Cadman vs. Horner*, 17 *Ves.* 10, 11 ; *Pars. on Cont.* 492 ; 1 *Madd. Ch. Pr.* 320—1 ; 1 *Sto. Eq. Jur. secs.* 750, 769 ; *Cathcart vs. Robinson*, 5 *Pet.* 364, 277 ; *Mortlock vs. Buller*, 10 *Ves.* 292 ; *Campbell vs. Spencer*, 2 *Binn.* 129, 139 ; 3 *Pars. on Cont.* 416, *note k; Phillips vs. Duke of Bucks.* 1 *Vern.* 227 ; *King vs. Morford*, 1 *N. J. Eq. (Sax.)*, 281.

Though there may not be what amounts to fraud, yet a want of equality and fairness in the contract will be fatal.    *Fry on. Spec. Perf.* (100 *Law Lib.*) 92 ; *Twining vs. Morrice*, 2 *Bro. C. C.* 326 ; *Willan vs. Willan*, 16 *Ves.* 72.

3. Where a specific performance is asked for, the contract should be certain, fair and just in all its parts. If any of these ingredients are wanting, equity will not relieve. *Fry on Spec. Per.* 83, *sec.* 203 ; *Buxton vs. Lister,* 3 *Atk.* 382 ; 1 *Sto. Eq. Jur. sec.* 769. This contract was either incomplete or unfair. It makes no provision for securing the deferred payments. The vendor's lien would be no security if Godwin should resell to an innocent purchaser. In such case, Collins would be wholly unprotected, as the lien would not go beyond the vendee's possession, and even against him the vendor would be put to his remedy in chancery.

4. A decree for a specific performance in this case would be a wrong upon the wife's right.

(1.) The farm was purchased with the proceeds of her maiden property. The proof shows that another farm, belonging to her, was sold, on the express understanding that the proceeds should purchase this farm. The object of the sale of that property was not a conversion of it into personalty, but an exchange of properties. In equity, money may be followed by the real owner into whatever property it may pass. 2 *Sto. Eq. Jur. sec.* 1259 ; 2 *Washb. on R. P.* 171-2 ; *Tarpley vs. Poage,* 2 *Tex.* 139 ; *Graham vs. Graham,* 1 *Ves. Jr,* 275 ; *Mackreth vs. Symmons,* 15 *Ves.* 349 ; *Lyford vs. Thurston,* 16 *N. H.* 399 ; *Lloyd vs. Spillet,* 2 *Atk.* 148 ; *McLenan vs. Sullivan,* 13 *Iowa* 521 ; *Sugd. on Vend.* 443.

(2.) The Court will not compel the wife to join in a deed, and will not commit the husband, because it would constrain the wife. Hence, equity will not interfere to compel specific performance where the wife's joining is necessary and she refuses to consent. *Fry on Spec. Perf.* 202. *sec.* 266 ; *Wooden vs. Morris,* 2 *Green's, Ch.* 65 ; 4 *Vin. Abr.* 202 ; *Young vs. Paul,* 2 *Stock. Ch.* 401 ; *Martin vs. Mitchell,* 2 *Jac. & Walk* 418 ; 1 *Sto. Eq. Jur. secs.* 731-4

*and note; Davis vs. Jones*, 4 *B. & P.* 267 ; *Clark vs. Reins*, 12 *Grat.* 98 ; *Weed vs. Terry*, 2 *Doug. Mich. R.* 344.

5. The contract is void for want of a United States internal revenue stamp. The bill sets out a contract properly stamped, which is an implied allegation that it was stamped, otherwise, supposing a stamp necessary, the bill would be demurrable. Hence the answer denying the stamp is responsive. The stamp must be affixed at the time of execution. *Rev. Laws, W. S. P.* 119 ; 3 *Pars. on Cont.* 344.

6. The contract not being signed by both parties, is not of mutual obligation. Collins had no remedy upon it. *Lawrenson vs. Butler*, 1 *Sch. & Lef.* 18 ; *Fry on Spec. Perf.* 108, *Sec.* 286 ; *Bromley vs. Jefferies*, 2 *Vern.* 415. Also *see* 1 *Ves. Jr.* 334 *note* 4.

THE CHANCELLOR :—

Of the several grounds taken in argument against a decree for the specific performance of this contract, it has been found necessary to consider only one, that is, the omission in the memorandum of the contract of any provision for securing the deferred payments of purchase money. Two points must be observed at the outset, in order that we may the better appreciate the effect of this omission upon the complainant's case. First, is the gross inequality and improvidence of the contract without some security, for deferred payments of such large amount. Here is a credit given for one-half the purchase money, of real estate, a sum not less than $4000.00. The credit is to run during eight years after the vendor shall have parted with his title and possession, and yet is to be not only without the usual form of security by bond and

mortgage, but even without any evidence of the complainant's personal obligation to pay, such as a bond, note or even due bill, leaving in defendant's hands, in lieu of his lands, nothing whatever, whereby to charge the complainant. For the sole written evidence of the complainant's responsibility, viz : the receipt, is his property, and comes now from his possession. Now, though a provision for securing deferred payments may not be technically one of the constituents of a contract in its legal definition, it is certainly a very material ingredient in considering the question of the fair and equal operation of the contract, so much so that such a provision is uniformly inserted in contracts for the sale of real estate, and the present one is, doubtless, the only known exception. The other feature of the case to be here noticed, is, that provision for the deferred payments was omitted in this memorandum, not because the defendant chose to waive it, but through an oversight of the necessity for it, an oversight due to the hasty conclusion of the contract before its terms had been matured in the minds of the parties, to which result, moreover, the complainant was himself instrumental, though it should be added in justice to him, without any improper design. In the negotiation which had been pending for some two or three weeks prior to the date of the contract, (August 20, 1866,) the minds of the parties were fixed only upon the question of price, Collins insisting upon $8000.00, Godwin offering $100.00 per acre. On the 17th of August Godwin first acceded to Collins' price and to his terms of payment, *i. e.* $4000.00 to be paid in cash on the delivery of possession, and the balance in annual instalments of $500.00 or $1000.00 each, with interest annually. But nothing was at that time said, and doubtless nothing thought of, by the parties, as to the mode of securing the deferred payments. The further detail of the negotiation was held in suspense by the necessity of obtaining the consent of Collins' wife to a sale before a conclusion could be reached. For this time was given. At the next meet-

ing, three days afterward, Collins announced the decision of himself and wife to sell. Now, it is just at this point that the question would be expected to arise, how shall the deferred payments be secured? It is impossible to believe that, had the bargain been concluded with the usual deliberation and legal formalities, a provision so important, and one uniformly introduced into such contracts, would have failed, as it did, to be, at least, considered. But Mr. Godwin's anxiety to secure the bargain precipitated it to an instant conclusion, and on his suggestion, without any deliberation or opportunity to mature its terms in detail, there is written by him, not the appropriate and usual form of contract, but a receipt for $10.00 on account of purchase money, embracing a statement of the bargain, but so hastily and loosely drawn that the price of the farm is not stated in the body of the receipt, but is added in a note below. And thus the usual security for the deferred payments was not provided, neither was it waived, but it was wholly overlooked. This construction of the acts of the parties is presumable not only from the unusual and unequal character of the contract as it stands, and from the extreme haste and looseness of the transaction, but additionally and very strongly, from the evident understanding of the complainant himself, that security for the deferred payments was not waived, as shewn by his tendering a bond and mortgage, the usual form of such security, before demanding a conveyance.

Let me now state the ground of the decree dismissing the bill. Considering that the contract, without any security whatever for the deferred payments, is hard and unequal, that if so executed it would work injustice between the parties, and that such provision was not waived but its necessity inadvertently overlooked, the contract, being in this particular, immature, I am of opinion that a court of equity, exercising that discretion which appertains to its jurisdiction for specific performance, ought not to execute the contract according to its terms, and that it has

not the power to supplement the contract by prescribing some mode of security which the parties themselves have not stipulated for.

Against this conclusion several arguments were pressed by the complainant's counsel. First, that the lack of any special security for the deferred payments would be supplied to the defendant by the vendor's lien for purchase money. This, if true, would afford only a precarious security, since the vendor's lien does not follow land into the hands of· a purchaser for value and without notice. But whether what is known in England as the vendor's lien, is here recognized, remains in doubt since the case of *Budd vs. Busti & Vanderkemp*, 1 *Harring.* 69, in the Court of Errors and Appeals. In that case, though the decision went upon other grounds, a majority of the judges expressed opinions decidedly adverse to the recognition in this state of a vendor's lien for purchase money. The policy of our law is against liens not of record, and the necessity for the vendor's lien is practically superseded by the long settled and uniform habit of our people to take special securities for unpaid purchase money. Next, it was insisted that the Court might, by its decree, direct that, bond and mortgage, or some other sufficient form of security, be given by the complainant for the deferred payments as a condition of a conveyance to him, the complainant having, by his bill, submitted himself to the direction of the Court in the premises. But the Court cannot oblige the defendant to accept a security, however adequate it may be, which he never stipulated for, simply because the complainant is willing to give it. Clearly, this would be to make a contract for the parties rather than to execute one made by them. That the Court has no such general power, is a point not to be discussed. See *Ormond vs. Anderson*, 2 *Ball & Beatty* 183. There are, indeed, a few cases, altogether exceptional, in which the Court has, in decreeing a specific performance, imposed upon a party some terms not stipulated for in the contract.

That has been done when a performance having been partially made, its completion according to the strict terms of the contract has become impracticable ; as through some defect of title or outstanding incumbrance, or change in the condition of the property. In such case where the parties have already acted under the contract and their interests have become so involved that they cannot be put *in statu quo*, the Court, in order to prevent gross injustice, will complete the execution of the contract; making such equitable adjustment between the parties by way of compensation or indemnity as circumstances may admit of. *Davis vs. Hone,* 2 *Sch. & Lef.* 340, and *Young vs. Paul,* 2 *Stockt. N. J. R.* 402, are cases of this class.

But the third and the more earnestly argued ground taken for the complainant, was that which challenged the discretionary character of the jurisdiction of the Court for specific performance. It was insisted that the contract being in writing within the Statute of Frauds, sufficiently certain in what is expressed, and unimpeached for fraud or for mistake in the omission of any provision agreed upon and intended to be inserted, a court of equity is bound to enforce it without respect to consequences, the Court not having, as the argument assumes to be the now settled law, a discretion to withhold its interference and leave the parties to their legal remedies upon the ground that in its judgment a specific performance will, under the circumstances, work injustice.

A patient examination of the whole course of decisions on this subject has left with me no doubt that, as a matter of judicial history, such a discretion has always been exercised in administering this branch of equity jurisdiction. It is the established rule that "a specific "performance of a contract of sale is not a matter of "course, but rests entirely in the discretion of the court "upon a view of all the circumstances." So Chancellor Kent sums up his review of the authorities in *Seymour vs. Delancy,* 6 *Johns. Ch. R.* 225. More fully stated, the

doctrine is this. In a court of law, if a contract be between competent parties, and if, when for the sale of lands, it be reduced to writing, a breach of it is actionable, notwithstanding it may be hard and unconscientious: though this a jury may consider in assessing damages. So, a court of equity will not interfere to set aside a contract upon any ground short of incompetency or fraud; but when called upon to enforce a contract specifically, the Court will go further and inquire whether the contract is an equitable one,—such as a court of equity, seeking only to do equity, ought to enforce. Not that this Court will weigh nicely the relative advantages or disadvantages of a bargain fairly made; but it will consider whether, either from gross inadequacy of consideration or inequality of terms, such as shocks the common sense of justice, or from anything in the relations of the parties or in the circumstances of the contract, it is unconscientious for a party to exact his advantage. Now, as it is impossible to reduce, within the limits of a legal definition or rule, the various and complicated transactions which may render a contract inequitable, the Court must, unavoidably, deal with each case upon its own circumstances. Herein, precisely, appear the nature and limits of the discretion assumed by the Court for this branch of its jurisdiction, and also in what sense it is that a specific performance is said to be "not a matter of course." The relief lies in the discretion of the Court so far, and only so far, that it must necessarily judge whether, under the circumstances of the case, the contract is or is not an inequitable one. That being determined, judicial discretion ceases : then, not before, what was quoted in argument from Sir Wm. Grant, 9 *Ves. Jr.* 608, becomes applicable, that "supposing the contract to have been entered into by " a competent party and to be," he adds, "in the nature " and circumstances of it unobjectionable, it is as much of " course in this Court to decree specific performance as to "give damages at law."

26

This doctrine of the discretionary character of the jurisdiction for specific performance, if traced historically, will be found to have sprung necessarily out of the objects for which the jurisdiction came to be exercised, and to rest upon solid grounds. The jurisdiction is very ancient. According to *Fonblanque, Book I, Sec.* 5, *n.* (o), it was established as early as the reign of Edward IV, and, as was said in the argument, the relief it affords is "the natural and better remedy," which the Courts of law fail to afford only because their modes of procedure are unsuited to it. Yet, in point of fact, the courts of equity have never treated specific performance as a merely alternative relief to that of damages at law, such as might be resorted to at a plaintiff's bare election ; but they have always administered it only as a supplementary remedy, in order to effect more complete justice in cases where damages afford an inadequate redress. Lord Redesdale, in *Harnett vs. Yielding,* 2 *S. & L.* 552 ; Sir Wm. Grant in *Hunt vs. Brandon,* 8 *Ves. Jr.,* 162. Hence it is that to contracts for chattels or money, the equitable remedy was not applied except in special cases ; as where a chattel, such as a picture, has a peculiar value, not to be measured by damages. Under contracts for lands this relief came to be general, the performance of such contracts, specifically, being always considered the only adequate remedy. Lord St. Leonards, who was quoted from 13 *Eng. L. & Eq : R.,* 257, does not there claim for this jurisdiction a larger application than has been stated ; and taking it to be thus limited, still it affords ample scope for his Lordship's high commendation of it as being founded in natural justice and conducive to a general spirit of good faith and fair dealing. This jurisdiction being thus, as it was often termed, an "extraordinary" one, exerted originally in order to effect more complete justice in certain cases where the courts of law failed, it came naturally to be considered that the Court ought not to exercise it when, under the circumstances, it would work injustice between the parties ; and that rather than even

hazard such a consequence, it were better to remit the parties to their old remedy at law. Says Lord Redesdale, in 2 *S. & L.* 554, "under these circumstances," *i. e.*, where injustice may be done by a decree, "I think considerable "caution is to be used in decreeing specific performance of "agreements, and the Court is bound to see that it really "does that complete justice which it aims at and which is "the ground of its jurisdiction." The caution of the Court in dealing with these cases was further enforced by another consideration adverted to in the earlier decisions, viz; that while at law, a jury may mitigate damages according to the circumstances, a court of equity, if it act at all, must do so with unmitigated severity, enforcing the contract strictly and under all circumstances. Lord Somers in 5 *Viner* 539; Chancellor Kent in *Seymour vs. Delancy*, 6 *Johns. Ch. R.* 230. It is an objection, of not a little force, to this doctrine of judicial discretion, that it involves some uncertainty in decisions, since different minds may be differently affected as to the equities of particular cases. But the alternative is between this and the rigorous execution of all contracts made between competent parties and in legal form, however hard and unconscionable they may be; and it is in accordance with settled judicial sentiment, founded upon great reflection and experience, that on the whole, it will work the less inconvenience and injustice to confide each case to the sound discretion and conscience of the Court, subject to correction upon appeal.

But, whatever be the grounds of the doctrine, the discretionary character of the jurisdiction for specific performance, the power to grant or refuse relief according to the equities of the particular case, has become settled by authority of the most eminent judges of all times; such as Lord Chancellors, Somers, 5 *Viner*, 539; Macclesfield, *Prec. in Chan.* 538; Talbot, *Cas. temp. Talb.* 234; and with great clearness and precision, by Lord Hardwicke in several cases, 2 *Atk.* 133; 3 *Atk.* 385, 388; 1 *Ves. Sr.* 12, 279.

That great judge said, in *Joynes vs. Stratham*, 3 *Atk.* 388, "the *constant* doctrine of this Court is that it is in their dis-- "cretion whether in such a bill they will decree a specific "performance, or leave the plaintiff to his remedy at law." In *Buxton vs. Lister*, 3 *Atk.* 385, he said, "nothing is more " established in this Court than that every agreement of this "kind" (*i. e.* of which a specific performance is sought) "ought to be certain, fair and just in all its parts. If any " of these ingredients are wanting in the case, this Court will "not decree a specific performance. For," he adds, "it is "in the discretion of the Court whether they will decree a "specific performance, because, otherwise, as I said before, "a decree might be made which would tend to the ruin of "one party." Again, in *Underwood vs. Hitchcock*, 1 *Ves. Sr.* 279, the same Judge, refusing to enforce a contract upon an inadequate consideration said. "the rule of equity in "carrying agreements into specific performance is well " known ; and the Court is not obliged to decree every agree- "ment entered into, though for valuable consideration, in "strictness of law, it depending on the circumstances. And, " undoubtedly, every agreement of which there should be a "specific performance ought to be in writing, certain and "fair in all its parts, and for adequate consideration ; and " on all the circumstances of this case there is not sufficient "ground to decree this." *In City of London vs. Nash*, 1 *Ves. Sr.* 12, Lord Hardwicke, in a case where a lessee, covenant- ing to rebuild some old houses, had rebuilt some and only repaired others, held, on a bill for specific performance that the covenant obliged the lessee to rebuild all ; but said, "the "most material objection for the defendant and which has "weight with me is, that the Court is not obliged to decree "a specific performance, and will not, where it would be a "hardship, as it would be here, *i. e.*, to oblige the lessee to " pull down what he had repaired at considerable expense." And this ground of hardship was carried even further in *Farrie vs. Brown*, cited 2 *Ves. Sr.* 304, where a defendant had contracted to convey a small estate which he held under a

will upon condition that if he should sell it, one half the purchase money should go to his brother. Lord Hardwicke is reported to have said that the hardship alone of losing half the purchase money " was sufficient to determine the "discretion of the Court not to interfere but to leave them "to law." ·These latter cases are cited only to show how wide the discretion of the Court was then held. Whether we may consider the discretion to have been well exercised in all these cases is not the question. The same views have been expressed by later English judges ;—By Lord Eldon, in *White vs. Damon*, 7 *Ves. Jr.* 34; *Mortlock vs. Buller*, 10 *Ves. Jr.* 303 ; by Lord Erskine, in *Radcliff vs. Warrington*, 12 *Ves. Jr.* 332 ; by Lord Redesdale. in *Harnett vs. Yielding*, 2 *S. and L.* 552 ; by V. Ch. Plumer, in *Howell vs. George*, 1 *Madd.* 17 : by Lord Brougham, in *Gould vs. Kemp*, 2 *Myl. & K.* 304 ; by V. Ch. Sir L. Shadwell, in *Kimberly vs. Jennings*, 6 *Simons* 340, and *Talbot vs. Ford*, 13 *Simons* 173 : by Lord Langdale, M. R., in *Wedgwood vs. Adams*, 6 *Beav.* 600; (cited in 2 *White and Tudor Lead. Cas. in Eq.*, *Part* 1, 556 ;) and by V. Ch. Cranworth, in *Meyers vs. Watson*, 1 *Simons' N. S.*, 323 ; 7 *Eng. L. and Eq. R.*, 69.

I have read, with care, these later decisions. The Courts have in them exercised the same free discretion in granting or refusing a specific performance according to the equities of the case which was asserted by the early judges, and especially by Lord Hardwicke. In some of these cases hardship and unreasonableness in the terms of the contract were alone held a sufficient objection. Thus, in *Kimberly vs. Jennings*, 6 *Simons* 340, in a contract to serve the plaintiffs, who were factors and merchants, as a clerk for six years, the defendant stipulated that during the term, he would not be engaged in any other employment. By another provision, the plaintiffs reserved the power at any time to discharge him for certain causes, themselves being judges. They did discharge him and afterwards filed a bill to restrain him from

engaging in the service of other factors and merchants. It was insisted by the plaintiffs that the clause restricting the defendant from entering into any other employment applied to him after his dismissal. The Court was doubtful as to the construction of the clause, but say, "supposing, however, the meaning of the agreement to be such, still it affords a strong reason against the interference of the court ; for it would be what is commonly termed a hard bargain, and upon this, as one among other grounds, the Court refused to interfere. The authority of this decision is questioned by Lord St. Leonards, in 13 *Eng. L. & E. R.* 258, but it was upon a wholly different point not at all touching the present question. So, in *Wedgwood vs. Adams* 6 *Beav.* 600 (cited in 2 *Wh. & T. Lead. Cas.* 556) where trustees who joined their *cestui que* trust in a contract of sale personally agreed to exonerate the estate from incumbrances. There were considerable incumbrances, and it did not appear but that the purchase money would be insufficient to discharge them, in which case the trustees would be liable for the deficiency. Lord Langdale, deeming it an unreasonable contract, refused a decree for specific performance, leaving the plaintiffs to their action at law. "The Court," said the Vice Chancellor, "must always have regard to the circumstances of each case and see whether it is reasonable that it should, by its extraordinary jurisdiction, interfere and order a specific performance, knowing at the time that if it abstain from so doing, a measure of damages may be found and awarded in another Court. Though you cannot, "said he," define what may be considered unreasonable by way of general rule, you may very well in a particular case come to a balance of inconvenience and determine the propriety of leaving the plaintiff to his legal remedy by recovery of damages. In *Talbot vs. Ford*, 13 *Simons* 173, a lease of mines for a term of thirty-one years contained a covenant that the lessor might *at any time before the expiration of the lease*, upon notice, take, at a valuation,

the machinery, stock in trade, and implements used by the lessee in working the mines. Upon a bill to enforce this stipulation within five years after the date of the lease, the V. C., Sir L. Shadwell, remarking upon the unusual character and hardship of the lease, says, "it seems to me that it was by mere want of caution that this covenant was worded as it is &c.; "but," he adds, be this as it may, my opinion is, that it is so injurious and oppressive to the lessee that this Court ought not to interfere for purpose of giving effect to it ; and therefore I shall not grant the injunction.

It remains only to observe that the American courts have uniformly maintained the discretionary character of the jurisdiction for specific performance. The subject has been thoroughly examined and authorities reviewed in the leading case of *Seymour vs. Delancy*, 6 *Johns. Ch. R.* 222. The reversal of the Chancellor's decree in that case (3 *Cow.* 445), was on another point and does not touch this question. Concurring with the doctrine of that case are *Torrey vs. Buck*, 1 *Green's Ch. R.* 374 ; *Ely vs. Perrine*, *ib.* 402 ; *Meeker vs. Meeker*, 16 *Conn.* 408 ; *Tyson vs. Walls*, 1 *Md. Ch. Dec.* 13 ; *Leigh vs. Crump*, 1 *Ired. Eq. R.* 229 ; *Clitherall vs. Ogilvie*, 1 *Desau.* 257, 263 ; *Ward vs. Webber*, 1 *Wash.* 279 ; *Campbell vs. Spencer*, 2 *Binn.* 133, and *King vs. Hamilton*, 4 *Peters*, 382.

Further, all the authoritative text books are in harmony upon this point. *Fonbl. Eq. B. I. Ch. III. Sec.* 9, *note* (1) ; 1 *Sugd. on Vend. Ch.* 4. *Secs.* 3 and 29, (*Am. Ed'n. of* 1851) ; 1 *Sto. Eq. Jur. Secs.* 742, 769 ; 3 *Pars on Cont.* 351. Probably on no subject has there been more unanimity of opinion, judicial and professional. Perhaps nowhere has this doctrine been more broadly accepted than by our Court of Errors and Appeals, in *Layton vs. Hudson*, 5 *Harring.* 87, in which the Court, after stating certain objections to a specific performance in that case, conclude, " and generally, when under the circumstances of the case, "the Court is unable to do exact justice between the

" parties,a specific performance will not be decreed, but the " complainant will be left to his remedy at law." It might have been sufficient to rest the question upon this authority; but the scope of the argument has led to an examination of the history and grounds of the doctrine, and it seemed due to the learned counsel for the complainant, and to the importance of the subject, to state the result.

Let the bill be dismissed.

NOTE.—An appeal from the decree entered in this cause was taken, and fully argued before the Court of Errors and Appeals, and at the June Term, 1869, of that Court the decree was affirmed. 4 *Houst.* 28.

The doctrine of the case has been also fully established by the Supreme Court of the United States, in *Willard vs. Tayloe*, 8 *Wall.* 557, in which the case of *Godwin vs. Collins* is cited with approval.

There is another class of cases pertinent to the present one, in which courts of equity have refused to enforce a contract, because it was doubtful whether a decree would effectuate the real intention of the parties.

In *Harnett vs. Yielding*, 2 *Sch.* & *Lef.* 548, a lease for twenty-one years had been made with a covenant for renewal. There was also a provision that the tenant might surrender on six months' notice, which, being dissatisfied with the rent, he did, and thereupon, the lessor indorsed on the back of the old lease, an agreement to execute a fresh one at any time at a less rent. No substituted lease was,in fact,executed, but the tenant in fact held, at the lower rent, until near the expiration of the twenty-one years, and then filed a bill to compel the lessor to execute a new lease *with a covenant for renewal included.*

The question was, whether the indorsed agreement to execute a fresh lease instead of the old one, *embraced the covenant for renewal* contained in the old lease. Lord Chancellor Redesdale doubted, and refused to interfere, stating, as one ground, that "courts of equity refuse to enforce the specific execution of " agreements when,from the circumstances,it is doubtful whether the party meant ": to contract to the extent that he is sought to be charged. It is true that the Lord " Chancellor's doubt,as to the intention of the party,arose upon the construction " of the agreement itself,and not from extrinsic circumstances, as in the present " case. But a court of equity could as well construe the agreement as a court of " law,and would have done so, had the agreement come before it for any other " purpose. Its refusal to give some construction to the agreement in this, as it " would do in other proceedings, was because, in the discretionary exercise of " this jurisdiction, it will not hazard injustice by decreeing in any case of even " doubtful intention : and such being the restraining consideration, it matters " nothing whether the doubt arises from the face of the agreement,or from cir- " cumstances extrinsic."

In *Lord Ormon vs.Anderson*, 2 *Ball & Beatty* 189, a lease for ninety-nine years was determined by a notice to the tenant to quit on the first of May 1807.

The defendant remaining in possession, an ejectment was brought, pending which, in August, 1809, the tenant proposed, in writing, to pay an advanced rent to the plaintiff, he executing a new lease. A dispute arising as to the time at which the new rent was to commence, the plaintiff filed a bill to compel the defendant to accept a new lease, with the rent to commence from the expiration of the notice to quit in May 1807, and not, as the tenant contended, from August 1809, when his proposal was accepted. The Lord Chancellor considered that the agreement, though not uncertain on its face, was yet, in fact an incomplete agreement, the term from which the new rent was to commence not having been considered and concluded, though, as he says, "evidently from the situation and acts of the parties it was to be deemed a material ingredient." In this feature, the case, more nearly than any other, approaches the present one.