James McFarland and Charles L. Reeve

*vs.*

Benjamin A. Reeve, Peter L. Bonwill, Philemon C. Carter, and William T. Bradley.

Kent, March T. 1876.

*Specific performance of contract for sale of realty; sufficiency of contract; good faith as against subsequent vendees.*

1. The following instrument in writing : "Received, August 2, 1871, of James McFarland, $300 in part payment of house and lot where he now lives, adjoining N. Luff and others and on R. R. Avenue, leaving a balance of $150, and when paid I am to give him a deed for the same by his paying me the interest on balance due, and the tax after this date, leaving the book account not settled," and signed, —is in form sufficient evidence of a contract for the conveyance of land to be capable of being specifically enforced.

2. Such instrument imports a sale, identifies the property by a sufficient description, so sets forth the purchase money that, by computation, its amount is certain, and indicates the terms of payment.

3. To entitle the vendee in a contract of sale of realty to a specific performance, he must show performance on his part.

4. There is nothing in the above instrument which implies that the vendee had a right to have the amount found due him on the book account, mentioned therein, applied in payment of the purchase money, and evidence *aliunde* is not admissible to show what the parties meant in reference thereto.

5. The act of the vendee in abandoning the premises (of which he was in possession as tenant of the vendor) subsequent to the making of the above instrument, and of the vendor in subsequently conveying the premises to a third party, tend to cast doubt upon the fact of sale under such instrument, and to show that neither of the parties considered the sale to have been actually made, or the terms of the contract to have been performed on the part of the vendee, so as to entitle him to specific performance as against such third party.

6. If there is such doubt about the rightful and honest character of the instrument relied on as evidencing a contract of sale, as that the chancellor ought not to rely on its integrity, specific performance will not be decreed.

7. In a suit for specific performance, the complainant must stand or fall by the contract set out by him; he cannot allege one contract and prove another.

BILL FOR SPECIFIC PERFORMANCE.—On the 13th day of March, 1876, James McFarland filed in this court his bill of complaint against Benjamin A. Reeve, Peter L. Bonwill, Philemon C. Carter, and William T. Bradley, praying a decree for specific performance of a contract in writing, alleged to have been entered into by Benjamin A. Reeve with the complainant, for the sale of a house and lot in Felton.

The instrument creating this contract, as stated by the complainant, was made on the 2d day of August, 1871, and as set forth by him in his bill is in these words:

Received August 2, 1871, of James McFarland, $300 in part payment of house and lot where he now lives, adjoining N. Luff and others and on R. R. Avenue, leaving a balance of $150, and when paid I am to give him a deed for the same, by his paying me the interest on balance due, and the tax after this date, leaving the book account not settled.

B. A. Reeve.

After the filing of the original bill on the 23d of September, 1876, one Charles L. Reeve became the purchaser of the interest of McFarland at a sale made by Peter L. Cooper, sheriff of Kent County, and which was conveyed to him by the said Cooper on the 13th day of November, 1876. And by a supplemental bill filed March 30, 1877, the said Charles L. Reeve was made a party complainant.

On the 22d day of February, 1873, after the date of the alleged contract, Benjamin A. Reeve and his wife, among other lands, conveyed the said house and lot to Peter L. Bonwill and Philemon C. Carter, two of the defendants, in trust to sell for the payment of the debts of Reeve, and which deed was duly recorded.

The grantees deny that at the time of taking the conveyance they had any knowledge or information of any claim of McFarland, legal or equitable.

In pursuance of the authority contained in the said deed, the said trustee sold the said house and lot at public sale in

the town of Felton, and at this sale William T. Bradley, one of the defendants, became the purchaser.

The bill is filed to compel specific performance of the contract evidenced by the writing bearing date August 2, 1871; and the prayers of the original bill, in effect, are that the defendants shall convey the said houses and lot to the complainant McFarland, and that the said Reeve, Bonwill, and Carter shall be decreed to discharge all liens that may have been obtained against the same by their default; while Charles L. Reeve, by his supplemental bill, prays that he may have the benefit of this suit, and be entitled to the same relief that McFarland could have had in case his interest had not been sold.

*J. Alexander Fulton*, for the complainants:

A slight variation or default, on the part of the vendee, in the performance of work to be done by him before the deed was to be delivered, will not prevent a decree for a specific performance, if the difference is a proper subject for compensation in money. In decreeing performance, the court may give a day and prescribe equitable conditions. *Hulmes* v. *Thorpe*, 1 Halst. 415. The right to specific performance ought not to and does not depend upon a strict and technical compliance, but upon an honest and fair effort to carry out the agreement on the part of the complainant. The failure to comply with an engagement to do a mere nugatory act ought not to impair the rights of a complainant in equity to relief, when the facts of his case otherwise concur to sustain his bill. *Coale* v. *Barney*, 1 Gill & J. 324.

As a general rule, a vendee of land, seeking to enforce specific performance by the vendor, must tender or bring into court the amount due on the purchase money; but where the vendor denies the obligation of the contract, attempts to rescind it, resumes possession of the land, and is in receipt of the rents and profits thereof, he may maintain his action without such tender. *Brock* v. *Hidy*, 13 Ohio St. 306.

As a general rule it is the duty of the vendor of land to prepare the deed, unless there was an agreement of the parties to the contrary. If, upon the facts stated by the vendee in his complaint for specific performance, it should appear that it was his duty to have prepared and tendered a deed to the vendor, his neglect to do so does not affect his right of action, but only the question of costs; and the court, while refusing to award costs against a vendor not in default, should still require him to execute the deed which he ought to execute. *Seeley* v. *Howard*, 13 Wis. 357.

A court of chancery is not bound by any fixed rule in relation to the tender of money. The money may at any time be ordered into court where the rights of a party require it. It is time enough for a party to bring money into court when he is required to do so. *Webster* v. *French*, 11 Ill. 254, 275; *Bourke* v. *Bocquet*, 1 Desaus. 142; *Louther* v. *Andover*, 1 Bro. Ch. 396; *Hunter* v. *Daniel*, 4 Hare, 420; *Bailey* v. *Metcalf*, 6 N. H. 158; *Washburn* v. *Dewey*, 17 Vt. 92.

Equity will extend relief, even if there has not been a strict legal compliance with the terms of the contract, if it can be done consistently with the essence of the agreement. *Shaw* v. *Livermore*, 2 Greene (Iowa), 338.

A court of equity discriminates between those terms which are found and those which are of the substance and essence of a written contract for the conveyance of land. *Snowman* v. *Harford*, 55 Me. 197.

A bill in equity to enforce the specific performance of a written contract to convey land on payment of the purchase money may be maintained without previous tender of the money or bringing it into court. *Irvin* v. *Gregory*, 13 Gray, 215.

Where the purchaser agreed to pay taxes, but let the property be sold for them, and bought it in himself, it was held that this was an indirect payment, and sufficient. *Oliver* v. *Croswell*, 42 Ill. 41.

In an action for specific performance against a vendor who refused to convey, it is not necessary that a deed should be tendered him for execution. *Goodale* v. *West*, 5 Cal. 339.

The failure of a vendee to tender performance and demand a deed before filing a bill for specific performance for the sale and conveyance of lands only affects the question of costs. *Morris* v. *Hoyt*, 11 Mich. 9.

The vendor's assignee stands in the shoes of the vendor. It is not incumbent on a purchaser, in the absence of a stipulation, to prepare or tender a deed. *St. Paul* v. *Brown*, 9 Minn. 157, 158. Where there is strong reason to believe a tender would be unavailing, it need not be made. *Kerr* v. *Purdy*, 50 Barb. 24.

Before a vendee can maintain an action to recover damages for the breach of a contract to convey land, he must demand his deed from the vendor ; but otherwise where he brings an action for specific performance, in which case a demand is only important in respect to costs. *Gray* v. *Dougherty*, 25 Cal. 266.

Where the vendor of land has notified the vendee that he will not convey, no tender is necessary. *White* v. *Dobson*, 17 Gratt. 262.

*George V. Massey*, for the defendants Bonwill, Carter, and Bradley :

The specific performance of a contract rests in the sound discretion of the court, and it may be refused when circumstances render it inequitable or improper. Add. Eq. p. 228, and cases there cited.

A court of equity will not decree specific performance unless it be made to appear by proof that the complainant has performed his own part of the contract. This must be averred and proved.

Nor will a decree for specific performance be made where it is shown that the complainant has been guilty of laches. *Parrish* v. *Koons*, 1 Pars. Eq. Cas. 97 ; *Insurance Co.* v. *Union Canal Co.* Brightly, 48 ; Fry, Spec. Perf. 219.

To entitle a complainant to the specific performance of an agreement, it must be shown, not only that the contract existed,

but that the complainant has performed the contract on his part. *Earl* v. *Halsey*, 1 McCart. 332; *Rogers* v. *Saunders*, 16 Me. 92; *Boone* v. *Missouri Iron Co.* 58 U. S. 17 How. 340 (15 L. ed. 171); *Jones* v. *Alley*, 4 Greene (Iowa), 181.

To entitle a party to relief on a bill for specific performance, he must come into court with clean hands so far as relates to the particular case which he presents, and in which he prays for aid. *Kitchen* v. *Coffyn*, 4 Ind. 504.

The contract which is sought to be specifically executed must not only be proved, but the terms of it must be so precise as that neither party could reasonably misunderstand them. If the contract be vague or uncertain, or the evidence to establish it be insufficient, a court of equity will not exercise its extraordinary jurisdiction to enforce it, but will leave the party to his legal remedy. *Colson* v. *Thompson*, 15 U. S. 2 Wheat. 336 (4 L. ed. 253); *Carr* v. *Duval*, 39 U. S. 14 Pet. 77 (10 L. ed. 361); *Rockwell* v. *Lawrence*, 2 Halst. 190 ; *Lockerson* v. *Stillwell*, 2 Beas. 357.

The person who seeks the enforcement of the contract must make out a stronger case than the one who resists the decree. *Tyson* v. *Watts*, 1 Md. Ch. 13.

THE CHANCELLOR. In considering the questions presented by the allegations and proofs, and in determining the rights of the parties, it is unnecessary to enlarge on the power of this court to compel specific performance in a case where, upon principles of equity, the complainant is entitled to such relief. The jurisdiction is well established and the course of practice clearly understood.

The case of the complainant rests wholly upon the contract stated in the bill, and upon his success in convincing the court of its fair and honest nature, and of the fulfillment on his part of the requisites necessary to entitle him to a decree for its performance. These things he must show in such wise as that the chancellor has no substantial doubt of their truth.

A decree for specific performance is discretionary. It becomes matter of course only when the court is convinced that

to refuse it would violate equity and leave the party complainant remediless.

It may be taken for granted that the paper set out in the bill, if liable to no other objection, furnishes evidence of such a contract as, upon sufficient proof of other matters, would entitle the party to the relief prayed. It imports a sale ; the property is identified by reasonable description; the amount of the purchase money, by computation, is certain, and the terms of payment indicated. There is vagueness and uncertainty in the reference to an unsettled book account, — whether it was intended that the balance that might be found due to McFarland on settlement was to be treated as a credit applicable in part payment is not stated, even inferentially, by reference to anything contained in the instrument. And, as the paper must speak for itself, evidence *aliunde* is not admissible to show what the parties meant.

The instrument expresses that the balance after the cash payment of $300 acknowledged by the receipt—being the sum of $150 — was to be paid, leaving the book account unsettled ; and not until such payment was McFarland to be entitled to a deed.

It would be going very far towards making a contract to interpolate by construction the words necessary to import a right on the part of McFarland, either as against Reeve or any subsequent purchaser, to have the sum that might be found due to him on this account to be applied in payment of the residue of the purchase money. Now there is no pretense that this sum of $150, with its interest, was ever paid in any manner other than by the appropriation of the book account, and which appropriation is attempted to be shown only by a paper appended to the answer of Benjamin A. Reeve, made after he had ceased to be the owner of the property in question by conveyance to Carter and Bonwill, and after the purchase by the defendant Bradley. It is clear that this answer and statement of Reeve is of no avail against any person other than himself, and there is no evidence whatever showing the correctness of the account, or when the articles were furnished.

Opinion: facts affecting good faith of contract.

No dates are given, and the whole paper is so irregular and suspicious that little reliance is to be placed on it. In the very statement of Reeve, acknowledging its correctness, is contained the admission that part was before and part after the purchase by McFarland; but when furnished, or how much before or after, nowhere appears. Surely on such a statement, even if admissible, to adjudge payments, as against the other defendants, of the balance of the purchase money,—admitting the instrument to be construed as providing for such appropriation of the account,—would be a perversion of justice.

Again, how does this statement of Reeve comport with the fact that, long after this transaction of alleged sale, and long after the alleged payment, he conveyed the house and lot, with his other property, to the defendants Carter and Bonwill to be sold by them, making no allusion to any sale to McFarland, but in the most solemn manner asserting his ownership, which, by the deed, as against a purchaser, he is estopped to deny, and against which he cannot be heard. It is true that in his answer he says that he has no recollection that he ever executed any deed of trust to Bonwill and Carter, and does not believe that he did; but this assertion only evidences the failure of his memory or his willful perversion of the truth. And in either case his statements are entitled to little weight.

It will be further observed, upon examination, that in the testimony taken on the part of the complainants there is no attempt to prove the execution of the paper relied on as the contract to be enforced, and, had not the signature "B. A. Reeve" been admitted at the hearing, the case of the complainants must have come to an end at that point. With this admission, however, the question of the fair character of the transaction and of the payment of the money is left wholly open. The fact of sale is in no way shown by any open act indicative of a change of ownership. At the time of the apparent date of the paper relied on as furnishing the evidence of the contract, Benjamin A. Reeve was the owner of the premises and James McFarland was the tenant thereof, occu-

pying the same under him. He did not take possession by reason of the contract or in part execution thereof. Nor does it appear that any other act was done by him in pursuance or by authority of the contract, nor any act inconsistent with the fact of holding as tenant, except the payment of the money specified in the receipt, if, indeed, the money was in fact paid.

Of course, if the existence and fairness of the contract were established *aliunde*, any such facts might be of more consequence, but when these are the very matters in dispute, it would have been more satisfactory to have been advised of such facts if any such existed.

Manifestly feeling the force of this consideration, the complainant in his bill stated that on New Year's Day, 1875, when he removed from the property, with his family, he did so with the design of making some improvements thereon, thus accounting for his abandonment of the premises and for his purpose in doing so. Now, upon the question of ownership, and of the fairness and validity of the contract sought to be enforced, it was most desirable to have proved that betterments were in fact made, and that money had been expended by the complainant in the improvement of his property ; and it was reasonable to expect that some evidence would have been produced to show that the purpose of the removal, as stated by the complainant, was carried into effect, and a fact established so materially corroborating the allegation of purchase and ownership. Nothing of this, however, appears, and the conclusion is irresistible that no such improvements were made, but that the complainant removed to and occupied another house, as tenant, paying rent, while, according to the allegations of the bill, he was the owner of a house of which he dispossessed himself only to render it more conveniently habitable ; which he not only failed to do, but left it to remain idle and wholly unproductive to him. This conduct is hardly reconcilable with probability ; and the omission to make the improvements, or in some way to render it profitable to him, makes seriously against his claim. But it is

alleged by the complainant that, although he removed from the property in question, he retained possession of the ground and tilled it for that year. Now, while in view of the fact that the complainant had been tenant of the property, and therefore would have had the right of occupancy in case the demise had not been put an end to,—of which there is no evidence other than is to be gathered from his abandonment,—this circumstance would have been immaterial; yet even in his offer to prove the fact, the complainant wholly failed, as Wyatt, the only witness who speaks of the ground being tilled, while stating that he thinks that potatoes were grown therein that year, expressly says that he does not know to whom they belonged.

Two persons were examined by the complainant to sustain the fact of sale, and thereby to support the contract sought to be enforced. There are no witnesses to the instrument. The material question to be determined is, When was the paper actually made?—whether at the time it purports or at some other time; and, if so, whether subsequently and for a purpose other than that which appears on its face.

If there is such doubt about the rightful and honest character of the instrument as that the chancellor ought not to rely on its integrity, specific performance will not be decreed. He cannot establish any other agreement, nor require performance of a different contract, than such as the complainant has set out.

The first witness who speaks to any understanding is James H. Evans. He says that in the year 1870 or 1871 he was hauling lumber from Felton to the Cain farm, to build a barn, and that while loading the wagon McFarland came up and gave to Reeve $20, and Reeve called on the witness to take notice that he had sold to McFarland the house in which he resided, and that the $20 was in part payment.

Now the complainant, in his statement of the manner and time of purchase, explicitly sets forth that Reeve, as by an instrument of writing under "his hand, dated the 2d day of August in the year of our Lord one thousand eight hundred and seventy-one, bargained and sold the said house."

He does not pretend that there was any other or prior agreement, and by this statement and the proof adduced to support it he must stand or fall. He cannot be permitted to allege one contract and to prove another. It is to be regretted that, on a question so vital, the chancellor should be left in doubt concerning the year when the barn on the Cain farm was built.

It was a matter susceptible of ascertainment and should have been made certain. If in the year 1870, it is clear that the agreement for sale spoken of by the witness—supposing him to be correct in his recollection of what transpired—could not have been that which the complainant has set forth, as it was long before the date of the instrument. If it was in 1871, then the payment does not tally with the specification of the receipt, and, besides, a reference to the testimony of Dunleavy will show that this precise sum of $20 was mentioned in an instrument very different from the contract sought to be established, and constituting one of a series of papers which passed between the parties, and which throws doubt upon the whole transaction.

The next witness, Edward Reed, is a little more explicit as to the date; and his testimony in regard to that fact militates against the complainant, so far as his recollection can be relied on. He states that it was in 1870 or 1871, and to the best of his knowledge in 1870, in the fall of the year, and he thinks in September. He states, further, that on the day of raising the barn, Reeve and McFarland were at his house, and that Reeve said to him: "Reed, I have sold a house and lot in Felton to-day to McFarland, and he is to make me a payment when we go home," and that McFarland was to pay the balance in installments.

Now if this conversation was in September, 1870, as the witness thinks, then the agreement for purchase was not that on which the complainant relies, for it was nearly a year before the date of the instrument. If it was in September, 1871, then it was subsequent to the agreement which the complainant sets forth, and as Reed testifies that it was

·expressly stated that the understanding of sale was had on that day, and that McFarland was to make a payment when they got to Felton, it is clear that this, being the first payment on a contract of sale then just entered into, cannot support a receipt which purports to have been given as long before as the 2d of August.

Again, Reed states that the contract then mentioned provided for a cash payment in hand, and the balance in installments.

What was the amount of the cash payment, or the terms of credit on the residue payable in installments, the witness does not remember. Now the contract of which the complainant asks specific performance can hardly be the one concerning which the witness speaks. This paper consists of an acknowledgment of the receipt of $300 in cash on the 2d of August, 1871, and a provision, according to the complainant's theory, appropriating a book account to the payment of the residue. I say according to the complainant's theory, for it is absolutely necessary for him to insist on this construction, or there is no pretense of payment of the balance. It will be remembered that even upon this theory no such payment is shown; for there is no attempt at proof otherwise than by the statement of Benjamin A. Reeve, annexed to his answer; and which as against the other defendant is not admissible. But, upon the face of the paper, it is hardly consistent with the testimony of Reed that this could have been the contract referred to, under the statement of the parties that McFarland was to make a payment when he got home, and to pay the balance in installments. And if this was not the contract referred to, then not only was the agreement a different one, but Reed wholly fails to prove any agreement capable of being specifically enforced, for he knows neither amount nor terms. Reed further states that, some two or three years after the first conversation, he fell in company with .Reeve in Felton, and that Reeve then told him that McFarland had paid him for the house and lot. Now the conveyance to Carter and Bonwill was in February, 1873, but little more than one year after

the date of the first conversation, to which Reed testifies, sup-
posing that conversation to have been in September, 1871.
Being thus, according to the proof, after the date of the con-
veyance, the assertions of Reed are of little importance; but
upon the face of the statement is this incongruity : The receipt
on which the case of the complainant proceeds is dated August
2, 1871, acknowledging the payment at that time of $300 out
of $450, and which was before the conversation with Reed,
if it occurred in 1871, and consequently before the sale
which Reed swears that Reeve told him had taken place on
that day; and there is no pretense that any other payment
ever was made, except by allowing a book account which
Reeve stated was partly before and partly after the pretended
purchase, and which part, so far as it was before the date, was
before the first conversation with Reed, and could hardly have
been part of the installments mentioned.

Equally unsatisfactory is the statement of McFarland to
Reed on the occasion of the payment of some money by Reed
to him.    Now while this testimony is not admissible against
the defendants, it is put in by the complainant, and may be
used as a test of truth.

Reed states that McFarland told him that the money came
in good time, as he had to raise some to buy leather and to fin-
ish paying Reeve for his house.    Now it is clear that if it was
to finish paying, it was not part of the $300, which was paid
in a gross sum in hand on the entering into the contract, nor
was any part of it applied in payment of the purchase money
subsequently; for it is not alleged that any sum whatever was
paid in cash other than the $300 specified in the receipt, and,
so far as that instrument imports or as otherwise appears, that
sum was paid at one and the same time.

Opposed to the integrity of the receipt containing the
contract sought to be enforced, and to the vague and incon-
clusive testimony, offered in support of it, is the evidence of
James Dunleavy.    In addition to proving the almost necessi-
tous pecuniary circumstances of McFarland, and thus throwing
increased doubt on the account, which contains $61.50, cash

lent, in a gross sum of $168.50, he testifies, in unequivocal language, to several conversations with the complainant Mc-Farland in 1873, after the date of the conveyance to the defendants Carter and Bonwill, totally inconsistent with the allegations of this bill, and clearly showing, if true, that there could not have been any sale to him, by Benjamin A. Reeve, of the house and lot in question, prior to such conveyance.

It is unnecessary to analyze or comment on this evidence further than to say that it is explicit as to the admissions and declarations of McFarland made at several times, and in prolonged and sustained conversations of which the object-matter and special drift could not be mistaken, and having reference to the payment of rent by the complainant for the premises in question; that in these conversations the solicitude of the complainant was to know to whom he should pay his rent, — whether to Reeve or to the defendants Bonwill and Carter; and, among other things, he testifies that McFarland expressly stated to him that he had already paid to Reeve nearly all the rent for 1873 in work, thus not only ignoring the contract of the sale generally, but rebutting any idea that the account for work was to be applied in payment of any purchase money. The whole testimony of Dunleavy is irreconcilable with the pretense that there could have been a sale to McFarland prior to the conveyance, and is pregnant evidence that the instrument relied on was not made in good faith; and he so far affected the other complainant, Charles L. Reeve, with knowledge of the facts, as at least to induce the strong suspicion that he was privy to the contrivance.

In view of all the facts, I do not think the complainants entitled to a decree for specific performance, and therefore dismiss the bill, with costs.