DIAMOND STATE IRON COMPANY,

*vs.*

THOMAS L. HUSBANDS.

*New Castle, March T.* 1898.

Where upon a bill for specific performance of a contract for the sale of real estate, filed by the vendor, a private manufacturing corporation, it appeared that the charter of the complainant's grantor, also a private corporation, before it took title to the real estate in question, had become void by reason of the failure to record its charter within the time limited by the general statute, although it was afterwards recorded under the provisions of an act extending the time for recording private acts, which act contained provisions that acts so recorded should have the same force and effect as if duly recorded according to law; and the act renewing the complainant's charter had been passed twenty-one days after the expiration of the original charter by constitutional limitation of time, which renewing act re-enacted the charter and continued the corporation for twenty years from the passage of the renewing act, which after its passage was duly recorded; it having been the custom of the State Legislature to pass such remedial acts of both classes; *held :—*

1. That the complainant was able and capable in law to convey a good title to the lands in question, and that a specific performance of the contract of sale should be decreed, no other objection having been made.

2. That the two remedial or curative statutes were constitutional, though operating retrospectively, in the one case to give the same force and effect to the charter of complainant's grantor as if it had been in the first instance duly recorded, and in the other case to relate back to the dissolution of the corporation by limitation of time, and to have the same effect as if enacted before it.

A court of equity will not make a decree for specific performance of a contract to convey land at the suit of a vendor where there is any doubt of the legal sufficiency of the title. A court of equity is not the forum in which land titles are tried.

Retrospective legislation as a rule is deemed dangerous and generally reprehensible, and while few state constitutions have prohibited it *eo nomine*, the general judicial opinion that a statute cannot retrospect so as to take away a vested civil right has been based upon the fundamental principles which underlie every well ordered civil government rather than specific constitutional provisions.

The old common law rule that, upon the dissolution of a corporation, title to its real estate would revert to the grantor, or his heirs, in strictness applied to the legal title only, and must be construed in connection with the equally well settled principles of equity, under which this Court would enforce, against him who took the reversion, a trust in favor of him who possessed the beneficial interest, by reason of having paid a valuable consideration for the land.

Prior to the modern legislation on the subject, upon the dissolution of a corporation, where no equity arose in favor of its stockholders and creditors, in consequence of a valuable consideration having been paid to the grantor, the whole title reverted to the grantor or his heirs, but where the grantor has received a valuable consideration for the land, a trust will be declared by a court of equity in favor of the stockholders and creditors, and, under proper circumstances, a court of equity will compel the holders of the legal title to convey it to the real beneficiaries of the trust. The naked legal title to land is not a vested interest in the sense of a property right which the courts will protect from retrospective legislation intended to divest it.

Bill for Specific Performance.—The bill sought a decree for the specific performance of a contract for the sale of certain real estate in the City of Wilmington, which the complainant had contracted to sell to the respondent, for which the payment was to be made by the execution of a bond and mortgage for the entire purchase money.

The respondent by his answer admitted the execution of the contract and alleged, as his only reason for refusing to accept the deed tendered by the complainant, the advice of his counsel that under it he would not be able to acquire a good title to the said land.

The only question, therefore, involved in the hearing was whether the complainant was able to convey such a title.

It appeared that the complainant's grantor, which was also a private corporation, under a charter passed by the General Assembly, March 7, 1867, which had not been recorded within a year from the date of its passage, as required by law, but was recorded under an enabling act authorizing the recording of private acts which had inadvertently been allowed to become void for want of recording.

It also appeared that the charter of the complainant, which was limited by force of the Constitution to the period of twenty years, had been renewed by an act passed twenty-one days after the expiration of the original charter by limitation of time. The renewal act was duly recorded according to law. It re-enacted the charter and continued the corporation for twenty years from the passage of the renewing act.

It was not disputed that if these remedial acts were constitutional the complainant would be able to convey a good title to the lands in question.

The land in question was part of a larger tract which had been conveyed to the complainant's grantor by Benjamin F. Townsend and wife by deed bearing date November 23, 1868, and duly recorded. This deed, the respondent alleged, was void for want of a grantee, the charter of the grantee not having been duly recorded according to law, unless the enabling act under which it was recorded were held to be constitutional. The record evidence and acts of Assembly are fully stated in the opinion.

The case was heard on bill and answer.

*Lewis C. Vandegrift* and *William S. Prickett*, for complainant.

The first objection taken to the title is that the deed from B. F. Townsend, *et ux.*, November 23, 1868, is void for want of a grantee, the act incorporating the Lobdell Car Wheel Tire and Machine Company being void, because not recorded as required by statute.

Every presumption is in favor of the validity of legislative acts and the burden of showing that an act is unconstitutional rests upon him who urges it. *Suth. Interp. Stat. sec.* 331; *Lycoming vs. Union*, 15 *Pa. St.* 169; *People vs. Briggs,*

50 *N. Y.* 553, 558; *State vs. Dombaugh*, 20 *Ohio St.* 173; *People vs. San Francisco, &c.*, 35 *Cal.* 606, 617; *Com'rs. vs. Silver*, 22 *Ind.* 491, 501; *Reed vs. State*, 12 *Ind.* 651; *Fletcher vs. Peck*, 6 *Cranch.* 128; *Foster vs. Essex Bank*, 16 *Mass.* 245, 269; *Lewis vs. McElvain*, 16 *Ohio* 355; *Cooley Const. Lim.* (5th *Ed.*) 220, 221; *People vs. Supervisors*, 17 *N. Y.* 235, 241.

The act authorizing the recording of deeds after the legal period has elapsed is one of a kind regularly passed by the General Assembly for a long period of years, and the validity of these acts has never before been questioned. Many titles rest upon them and such statutes work no injury to anyone.

Even were the deed in question void for want of a grantee capable of taking, the grantors having accepted the purchase money would hold the property in trust for those who paid it. Such being the case, there is no valid reason why the Legislature should not effectuate the contract already made and permit the parties entitled to take the property in the name of the corporation. This is simply to do in another form what the purchasers would be compelled to do by the aid of a court of equity.

The only constitutional objections to the remedial act must be found either in *Article* 1, *sec.* 10, which forbids any state to pass any *ex post facto* law, or law impairing the obligation of contracts, or in the general constitutional limitation that vested rights cannot be destroyed or impaired by direct legislation.

It is well settled that *ex post facto* laws apply only in criminal cases and have no relation to retrospective legislation affecting civil rights. *Fletcher vs. Peck*, 6 *Cranch* 87, 138; *Calder vs. Bull*, 3 *Dall.* 386, 390; *Suth. Stat. Const. sec.* 465; *Watson vs. Mercer*, 8 *Pet.* 88; *Cooley, Const. Lim.* (7th *Ed.*) 373, 374.

It cannot be contended that this remedial act impairs the obligation of a contract. That obligation is the law which binds the parties to the performance of their agreement. *Ogden vs. Saunders*, 12 *Wheat.* 213, 239; *Sturges vs. Crowningshield*, 4 *Wheat.* 122. It is the means provided by

law by which the contract can be enforced and any legislation which lessens the efficacy of these means impairs the obligation and is unconstitutional. *Louisiana vs. New Orleans*, 102 *U. S.* 203.

In validating a void contract its obligation is not impaired but legal impediments to its enforcement, according to the intention of the parties, are removed. *Suth. Stat. Constr.* sec. 474; *Goshen vs. Stonington*, 4 *Conn.* 209; *Satterlee vs. Matthewson*, 2 *Pet.* 406; *Gibson vs. Hibbard*, 13 *Mich.* 214; *Welch vs. Wadsworth*, 30 *Conn.* 149; *Wood vs. Kennedy*, 19 *Ind.* 68; *Baugher vs. Nelson*, 9 *Gill* 299; *Cooley, Const. Lim.*, 460, 461, 465, 466, 467; *Tilton vs. Swift*, 40 *Ia.* 78, 81; *Lewis vs. McElvain*, 16 *O. St.* 347, 354, 355.

It is submitted that the general principle that vested rights cannot be destroyed or impaired by direct legislation has no bearing upon this case. The grantors have no vested interest, in the property, to be destroyed or impaired by the remedial act since they have for fair consideration parted with all their interest therein and are estopped from setting up any claim thereto. There can be no vested right to do wrong. *Moore vs. State*, 43 *N. J. L.* 203; *Maxwell vs. Gaetschius*, 40 *N. J. L.* 383; *Baugher vs. Nelson*, 9 *Gill* 299; *Foster vs. Essex Bank*, 16 *Mass.* 245; *Lycoming vs. Union*, 15 *Pa. St.* 166, 170; *State vs. Newark*, 25 *N. J. L.* 399; *Cooley, Const. Lim.* 466; *Lewis vs. McElvain*, 16 *O. St.* 347, 355.

The fact that an act of the Legislature is retrospective in its action is not necessarily an objection and a great variety of such statutes, remedial and curative in their nature, have been enacted with benificent effect and held to be constitutional by the courts. *Satterlee vs. Matthewson*, 2 *Pet.* 380, 406, 413; *Sturgis vs. Hull*, 48 *Vt.* 302; *Gibson vs. Hibbard*, 13 *Mich.* 214, 218; *Baldwin vs. Newark*, 38 *N. J. L.* 158; *Bensley vs. Ellis*, 39 *Cal.* 309; *Annable vs. Patch*, 3 *Pick.* 360; *Johnson vs. Johnson*, 26 *Ind.* 441; *Tilton vs. Swift*, 40 *Ia.* 78; *Watson vs. Mercer*, 8 *Pet.* 88; *Goshorn vs. Purcell*, 11 *O. St.* 652; *Goshen vs. Stonington*, 4 *Conn.* 209; *Lewis vs. McElvain*, 16 *O. St.* 347, 353, 354, 355.

If the Legislature might have dispensed with the requirement of the previous statute, a neglect of the requirement may be cured by subsequent legislation and such legislation is to be liberally construed. *Suth. Stat. Constr. secs.* 483, 484; 23 *A. & E. Encyc. L.* 452, 453 (*notes 6 and* 1); *Cooley, Const. Lim.* 458, 459, 460, 461, 462, 465, 466, 471; *Lewis vs. McElvain,* 16 *O. St.* 347, 353, 354, 355; *Bank vs. David,* 16 *Barb-* 188; *Hess vs.Werts,* 4 *S. & R.* 356, 361; *Savings Bank vs. Allen,* 28 *Conn.* 97, 102; *Goshen vs. Stonington,* 4 *Conn.* 209.

The question to be considered with respect to such statutes is whether the acts done would be effectual, for the purpose intended, if a law made prior to those acts had directed them to be done. Rights resting upon such curable defects cannot be deemed meritorious and are not entitled to the protection accorded to vested rights. *Suth. Stat. Constr. sec.* 484; *Baugher vs. Nelson,* 9 *Gill* 299; *O'Brian vs. County Commissioners,* 51 *Md.* 15, 23; *Thomson vs.Lee County,* 3 *Wall.* 329; *People vs. Mitchell,* 35 *N. Y.* 551; *Johnson vs. Richardson,* 44 *Ark.* 365; *Cooley, Const. Lim.* 463, 471.

Finally, on this branch of the case, if the grantors in the deed, which was recorded by virtue of the remedial statute, ever had any rights or interest in the property in question, it accrued on November 23, 1868, nearly thirty years ago, and they are, therefore, barred from asserting it now by the statute of limitations. *Cooley, Const. Lim.* (*5th Ed.*) 448–9.

The second ground of defense is that the charter of the complainant was not re-incorporated within twenty years after its passage, and, therefore, expired by limitation.

The act renewing the charter was passed twenty-one days after the expiration of the period of twenty years, during which the original charter was constitutionally in force, and it expressly re-incorporated and continued the corporation in force for twenty years from the date of its passage.

Such being the express intention of the Legislature, that intention will be upheld and made effectual, unless it conflicts with the words of the Constitution or some settled rule of law. *Suth. Stat. Constr., sec.* 218, 219, 234, 239, 240. "The object sought to be accomplished exercises a potent influence

in determining the meaning of not only the principal but also the minor provisions of a statute. To ascertain it fully, the Court will be greatly assisted by knowing, and it is permitted to consider, the mischief intended to be removed or suppressed, or the necessity of any kind which induced the enactment." 1 *Kent Com.* 461; *Suth. Stat. Con. secs.* 292, 321, 322; *Hawkins vs. Gathercols*, 6 *DeG.M. & G. I.*; *Tonnele vs. Hall*, 4 *N. Y.* 140; *Clark vs. Janesville*, 10 *Wis.* 136; *Dodge vs. Gardiner*, 31 *N. Y.* 239, 243; *Big Black Creek Co. vs. Commonwealth*, 94 *Pa. St.* 450, 455; *Ruggles vs. Illinois*, 108 *U. S.* 526; *People vs. San Francisco, &c. R. R. Co.*, 35 *Cal.* 606, 617.

The necessary construction of the remedial act was that the corporation to which it referred should be not a new corporate body but a continuation of that created by the original act. Any other construction would make the act meaningless and inoperative, whereas the settled rule is that such a construction must be given to an act as to make all parts of it operative, rational and valid. *Matter of New York and Brooklyn Bridge.* 72 *N. Y.* 527, 529, 530; *Suth. Stat. Constr. sec.* 239.

The tendency of all modern decisions is that corporations do not absolutely terminate for all purposes upon the expiration of their charters, but are continued with the power in equity to wind up their affairs, and that the real estate of private, commercial, moneyed corporations, even in the absence of any legislation on the subject, does not revert to the grantor. Conveyances to such corporations are usually made for valuable considerations and without the contemplation of a reversionary interest, and the shareholders or incorporators who contribute the means to purchase the property are themselves best entitled to the reversion. The corporation is considered in equity as the trustee and they are the beneficiaries. 2 *Spelling, Priv. Corp. secs.* 1015, 1016; *Bacon vs. Robinson*, 18 *How.* 480; 5 *Thomp. Corp., secs.* 6745, 6746, 6730; *Morawetz, Priv. Corp., sec.* 1032 (2nd Ed.); *Church vs. United States*, 136 *U. S.* 47; *Lum vs. Robertson*, 6 *Wall.* 277; *Lathrop vs. Steadman*, 13 *Blatch.* 134; *Blake vs. Portsmouth &c. R. R. Co.*, 39 *N. H.* 435; *Mumma vs. Potomac*, 8

*Pet.* 281, 286; *Wallamet Falls Co. vs. Kittredge*, 5 *Sawyer* 49; *Frothingham vs. Barney* 6 *Hun*, 366; *Burrall vs. Bushwick R. R. Co.*, 75 *N. Y.* 211, 216; *Owen vs. Smith*, 31 *Barb.* 641, 643; *Towar vs. Hale*, 46 *Barb.* 361; 4 *A. & E. Encyc. L.* 306, 307.

The general incorporation act of 1883, *Rev. Code* 580, expressly provides that when corporations created under it are dissolved in any way are continued as corporate bodies for the purpose of winding up their affairs; and such provisions are held to be constitutional. *Foster vs. Essex Bank*, 16 *Mass.* 244. . This reasoning seems to answer fully the objection that the construction of the renewing act here contended for might conflict with the constitutional limitation of corporations not for public improvement to the period of twenty years.

Such provisions in other constitutions have been applied with many modifications and limitations of their literal strictness. *Morawetz, Priv. Corp.* (*2nd Ed.*) *secs.* 1002, 1036, 1037; *Spelling, Priv. Corp. secs.* 1015, 1016; 5 *Thomp. Corp. secs.* 6745, 6746, 6750.

The renewing act, it is true, was not passed until twenty-one days after the term fixed in the original charter had expired, but by retrospective operation it prevented dissolution and continued the corporation as fully and in the same manner, clothed with all the rights and vested with all the property, as under the original charter.

Corporations may be revived by the Legislature after they have become dissolved *de jure*, and the only limitation upon the power of the Legislature is that the act of revival will not operate to displace any rights acquired in consequence of the dissolution. 5 *Thomp. Corp. sec.* 6760; 2 *Morawetz, Priv. Corp. sec.* 1038; *Angell & Ames on Corp. sec.* 780 (*4th Ed.*).

Here no rights vested on account of the expiration of the term limited in the original charter.

If it be admitted, for the sake of argument, that the corporation during the interval between the expiration of the original term and the passage of the act of revival was not a corporation *de jure*, it was one *de facto*, maintaining its cor

porate organization and prosecuting its corporate business, and no one who contracted with it could set up the informality of its organization in a suit to enforce the obligation. The State alone could call its validity into question. The respondent cannot urge it as a defense to the present suit. *Morawetz, Priv. Corp.* sec. 750, 753, 1002; *Brouwner vs. Appleby*, 1 *Sandf.* 158; *Grand Rapids Bridge Co. vs. Prang*, 35 *Mich.* 400; *John vs. Farmers' Bank*, 2 *Blackf.* 367; *Jones vs. Cincinnati T. F. Co.*, 14 *Ind.* 89; *Blake vs. Holley*, 14 *Ind.* 383; *Cong. Soc. vs. Perry*, 6 *N. H.* 164; *Jones vs. Dana*, 24 *Barb.* 395; *Douglas Co. vs. Balles*, 94 *U. S.* 104; *County of L. vs. Barnes*, 94 *U. S.* 70; *Goodrich vs. Reynolds*, 31 *Ill.* 490; *Rice vs. Rock I. & A. R. R. Co.*, 21 *Ill.* 93, 95; *Cowell vs. Springs Co.*, 100 *U. S.* 55, 60; *Smith vs. Sheeley*, 12 *Wall.* 358; *Close vs. Glenwood Cemetery Co.*, 107 *U. S.* 466, 478; *Baker vs. Neff*, 73 *Ind.* 68, 70; *Thompson vs. Candor*, 60 *Ill.* 244.

*Benjamin Nields,* for the respondent, contended that the complainant's title was defective, because the title of the land, on the one hand, failed to vest in the complainant's grantor, in consequence of its neglect to record its charter within the time prescribed by the statute, and on the other hand, because whatever title to the land was possessed by the complainant, reverted to its grantor at the time its charter expired by limitation, and he claimed that the remedial statutes cited were unconstitutional and void, so far as this title was concerned, because before their enactment, the interest of the original grantor had become a vested one, and the remedial statutes could not divest a vested interest.

He relied upon *Commercial Bank vs. Lockwood's Admr.* 2 *Harring.* 8, as conclusive of the law in this State, and dwelt also upon the cases therein cited.

The Chancellor:—

The bill filed in this cause prays for the specific performance of an agreement in writing entered into on the 24th day of February, 1897, by the complainant, the Diamond State Iron Company, and the respondent, Thomas L. Husbands.

By this article of agreement the complainant agreed by good and lawful deed or deeds to convey unto the respondent, on or before March 6, 1897, a lot of land in the city of Wilmington at the corner of Lobdell and Heald Streets, in fee simple and clear of incumbrances, for the consideration of twelve hundred dollars, the respondent agreeing that upon the delivery of such deed or deeds he would secure to the complainant the payment of said consideration of twelve hundred dollars by a bond and mortgage payable, with interest, on or before the expiration of three years from the date of the deed, with the condition that the principal and interest should become due in sixty days after any defalcation in the payment of interest; possession to pass upon delivery of the deed.

A deed was executed and tendered by the complainant in accordance with the terms of the agreement, but the respondent declined to accept it and to execute and deliver the said bond and mortgage, returning said deed with a letter from his counsel, Benjamin Nields, Esq., to the effect that he had advised the respondent "that the said deed tendered as aforesaid, does not and would not well and sufficiently grant, convey and assure the said property to him in fee simple."

The respondent filed an answer admitting all the facts as above stated, but denying that the complainant had a good and sufficient title in fee simple, and alleged as follows in his answer:

"XI. And the respondent further says that said lot, piece or parcel of land in paragraph 3 of said Bill of Complaint mentioned, is part of a larger piece or parcel of land, conveyed by the Lobdell Car Wheel Company to said complainant, by deed dated July 20th, A. D. 1883, and recorded in the office of the Recorder of Deeds at Wilmington, in Deed Record R, vol. 12, page 424, &c. That said larger tract of land was conveyed to the said Lobdell Car Wheel Company under the corporate name of The Lobdell Car Wheel, Tire and Machine Company, by Benjamin F. Townsend and wife, by deed dated November 23rd, A. D. 1868, and recorded in the office as aforesaid in Deed Record Y, vol. 8, page 146, &c.

"That the said The Lobdell Car Wheel, Tire and Machine Company was incorporated by Act of the General Assembly of the State of Delaware, passed March 7, A. D. 1867. That said Act was a private act, was not of a public nature or published as such and that the same was not recorded in the Recorder's Office in one of the Counties of this State, within twelve months after the passage thereof, and said act, therefore, became and was void at the time of the conveyance of the said tract of land to it by the said Benjamin F. Townsend and wife, as aforesaid.

"XII.   And said respondent further says that the said Diamond State Iron Company, the complainant, was incorporated by an Act of the General Assembly of the said State of Delaware, passed March 7th, A. D. 1865, to continue in force for twenty years; that said incorporation was not for public improvement and that the same was not re-enacted at any time within twenty years after the passage thereof, and that said act expired by act of limitation March 6, A. D. 1885, and said corporation thereby then became and was from thenceforth dissolved.   That by the laws of this State all of the estate, right, title and interest of said Complainant in and to the said lot, piece or parcel of land in paragraph 3 of said Bill of Complaint mentioned, upon the dissolution of said corporation reverted to and became vested in the said grantor thereof, viz. The Lobdell Car Wheel Company, its successors or assigns.

"XIII.   And said respondent respectfully submits that by reason of the failure of the said The Lobdell Car Wheel, Tire and Machine Company to record its charter in one of the Counties of this State within twelve months after the passage of the act incorporating the same, and because of the expiration of the Charter of the said Complainant on the Sixth day of March, A. D. 1885, as above set forth, the said complainant was not on the said 24th day of February, A. D. 1897, seized in fee simple of said lot, piece or parcel of land, and was not then and is not capable in law of well and sufficiently granting, conveying and assuring unto the respondent the said lot, piece or parcel of land in fee simple, clear of all incumbrance and all

manner of liens whatsoever according to its covenants in that behalf in said agreement set forth."

Two remedial or curative statutes are cited by counsel for the complainant, which they claim were enacted for the purpose of saving the Lobdell Car Wheel Company and the Diamond State Iron Company, respectively, from the legal consequences of the neglect fully set forth and described in the respondent's answer, as above quoted, and, therefore, have removed from the property in dispute any alleged cloud upon the title,

The first statute cited, the one applying to the Lobdell Car Wheel Company, was passed February 4, 1869, Laws of Delaware, Vol. 13, page 356, and is as follows:

"An Act to Revive and Extend the Time for Recording Private Acts.

"WHEREAS by Chapter 4, Section 3 of the Revised Statutes of the State of Delaware, it is provided that private statutes (namely 'such as are not of a public nature, or published as such') shall be recorded in the Recorder's office in one of the counties of this State within twelve months after their passage, or they shall be void;

"AND WHEREAS by Chapter 1, Section 2 of Volume 13, Part 1, it is provided 'that the Secretary of State be and he is hereby directed to exclude from the publication of the laws of this State all acts of incorporation, and other acts of a private nature, unless such acts contain a provision directing their publication;'

"AND WHEREAS a number of private and unpublished acts heretofore passed have inadvertently been allowed to become void through ignorance of the aforesaid enactments;

"Therefore, for the purpose of relieving the parties interested of the embarrassments and disappointments arising from unintentional neglect in the premises,

"Be it enacted by the Senate and House of Representatives of the State of Delaware in General Assembly met,

"Section 1. That all unpublished acts heretofore passed, and that have become void on account of not being duly recorded in compliance with the provisions aforesaid, be and the same are hereby severally revived and re-enacted, and, together with the provisions therein contained, are respectively declared to be in full force; and all acts and transactions done and performed under the provisions of said acts respectively shall have the same force and effect, and be as valid to all intents and purposes as if the said acts had been severally recorded according to law; *Provided*, That this enactment shall not take effect

in the case of any act that has become void as aforesaid until a certified copy thereof, procured of the Secretary of State, shall be duly recorded in the Recorder's office of one of the counties of this State; *And provided further*, That no such copy of a voided act shall be received for record after the expiration of one year from the passage of this act.

"Section 2. This act shall be deemed and taken to be a public act and published as such."

The act incorporating the Lobdell Car Wheel Company was recorded May 20, 1869, in New Castle County in Private Acts Record B. Vol. 1, page 59; that is within the year prescribed by the remedial statute above quoted, and the deed of the property in dispute was made to the complainant, July 20, 1883.

The second statute cited was one re-enacting the charter of the complainant, the Diamond State Iron Company, and was passed March 27, 1885, Laws of Delaware, Vol. 17, page 974, twenty-one days after its expiration by limitation of time on March 6, 1885. It is as follows:

"A further supplement to an Act entitled 'An Act to incorporate 'The Diamond State Iron Company."

"Be it enacted by the Senate and House of Representatives of the State of Delaware in General Assembly met, (two;thirds of each branch thereof concurring herein):—

"Sec. 1. That Section 1 of the act entitled 'An Act to incorporate the Diamond State Iron Company,' passed at Dover, March 7, 1865, be and the same is hereby amended by inserting the words 'and steel' after the word 'iron' in both places where the said word 'iron' occurs in the fifth line of said section as the same is printed on page 584 of the 12th volume of Delaware Laws.

"Sec. 2. That that Act to which this is a supplement as amended by a supplement thereto passed January 23, 1873, and by section 1 of this Act, be and the same is hereby re-enacted, and the corporation thereby created is reincorporated and continued in force for twenty years from the passage of this Act with all the powers, privileges and franchises and subject to all the provisions granted or contained in the said original act of incorporation as so amended."

This act was recorded in New Castle County, April 9, 1885, in Private Act Record C, Vol. 1, page 302.

The cause was heard on bill and answer, and it appears from the pleadings and statements of counsel for the respective parties that the respondent is both ready and willing to take the property in accordance with the terms of his agreement, and that his only reason for refusing to accept the deed tendered by the complainant, and executing and delivering to the complainant his bond and mortgage for twelve hundred dollars, is the alleged defect in complainant's title,— his belief that the complainant cannot give him a good title to the lands for the reasons given in the paragraphs of his answer above quoted.

It is not contended that the statutes above quoted in full are not retrospective in their operation if constitutional, nor that the act in the one case does not give the same force and effect to the charter of the Lobdell Car Wheel Company as if it had been recorded in the first instance within the time prescribed by the general statute for recording of private acts, nor that the act in the other case does not re-enact the charter of the Diamond State Iron Company retrospectively so that the re-enactment relates back to a time prior to the dissolution of the corporation by the limitation of time, and has the same effect as if it had been enacted on or before March 6, 1885, that is twenty-one days prior to its actual passage.

Such statutes have long been familiar to the Bar of this State, for it has been the custom of our Legislature, at each biennial session, to pass such a retrospective act as the one above quoted for the purpose of extending the time for the recording of private statutes; and it has not been unusual for Delaware corporations, which have inadvertently allowed the twenty years of limitation to expire without re-enactment of their charter, to obtain from the Legislature such a retrospective act of renewal as the statute quoted above, renewing and continuing the charter of the Diamond State Iron Company.

Their constitutionality or effect has never been passed upon by our Courts, because of the general acquiescence and

approval of the Bar, and the question is raised for the first time in the cause pending before me.

The learned counsel for the respondent contends that both statutes are unconstitutional and inoperative in so far as they may be construed to affect the interest of the grantors in the real estate in question, which it is claimed became vested prior to the passage of either act, and, therefore, could not be taken from them by an act of the legislature.

He cites *Commercial Bank vs. Lockwood's Adm'rs.*, 2 *Harring.* 8 (1832). In that case Mr. Justice Black delivering the opinion of the Superior Court said:

"If the fact of dissolution, absolute dissolution, be admitted or established, there would seem, from the authorities which bear on this point, to be no question as to what becomes of the estate both real and personal, and of the rights and credits of the corporation. The text books and cases decided are uniform in their language—that the real estate held by the corporation at its civil death, reverts to the grantor and his heirs—that the personal estate vests in the people, or in England, in the crown, and that the debts due to and from the corporation are totally extinguished, so that neither the stockholders nor the directors or trustees of the corporation can recover or be charged with them in their natural capacity. *Levinz* 237; *Owen* 73; 2 *Anderson* 107; 1 *Blackford's Indiana Rep.* 267; 2 *Bacon's Abr.* 32; 4 *Comyn's Digest* 273; 1 *Black. Com.* 484; 2 *Kyd on Corp.* 516; 2 *Kent's Com.* 307–9; *Angell and Ames on Corp.* 513."

In the case of *Fox vs. Horah,* 1 *Ired. Eq.* 358, decided June 1841, Judge Gaston says, "We believe that the rules of common law, governing the disposition of the property which the corporation held, at the moment of death are well settled —though differing according to the character of the property upon which they operate as being either realty, personalty, or choses in action. The real estate remaining unsold reverts to the grantor and his heirs, 'because (in the language of Lord Coke) in the case of a body politic or incorporate the fee is vested in their political or incorporate capacity, created by the policy of man, and therefore the law doth annex a condi-

tion in law to every such gift and grant that if such body poli-
tic or incorporate be dissolved, the donor or grantor shall re-
enter, for that the cause of the gift or grant faileth.' Co.
Lit. 136.''

It is not necessary to cite other cases upon this point,
for the effect at common law of the dissolution of a corpora-
tion upon the legal title to its real estate, was described in
the same language by the courts generally, whenever the
subject was abstractly discussed, prior to the time when the
general introduction and growth of the modern trading or
business corporation occasioned the almost universal enact-
ment of the statutes, from which the existing law of corpora-
tions has been largely developed.

Certain modern commentators on the law of corpora-
tions who intemperately criticise and denounce the able and
learned judges who so announced the old common law rule,
seem to lose sight of the dual nature of our legal system. It
was the province of the common law judges to apply to ques-
tions of title to real estate only the fixed rules of the common
law, those highly technical but harmonious and interdepen-
dent principles which taken together govern the legal owner-
ship of land.

But the rules of the common law are supplemented and
made consonant with our ideas of equity and natural justice
by the system of jurisprudence administered by the Court of
Chancery, and must be construed in connection with the
equally well settled principles of equity.

The two systems have been developed side by side, and
not without some friction at times, but long before the dis-
tinctly modern period they constituted but one harmonious
body of law, although administered by two distinct tribunals,
and it will be found that in every case where the real estate
of a dissolved corporation actually reverted to the grantor,
or his heirs, that is where the grantor took the beneficial as
well as the legal estate. he had received no valuable consid-
eration for his land, upon which could be raised a trust in
the Court of Chancery. I, of course, do not allude to grants

to turnpike companies, &c., which involve other considerations.

As Mr. Justice Campbell remarked in 1855 (*Bacon et al. vs. Robertson*, 18 *How.* 487), "The instances which support the *dictum* in reference to the lands, consist of the statutes and judgments which followed the suppression of the military and religious orders of knights, and whose lands returned to those who had granted them, and did not fall to the king as an escheat; or of cases of dissolution of monasteries and other ecclesiastical foundations upon the death of all their members; or of donations to public bodies, such as a mayor and commonalty. But such cases afford no analogy to that before us. The acquisitions of real property by a trading corporation are commonly made upon a bargain and sale, for a full consideration, and without conditions in the deed; and no conditions are implied in law in reference to such conveyances. The vendor has no interest in the appropriation of the property to any specific object, nor any reversion, where the succession fails."

Mr. Thompson is no doubt correct when he says (5 *Commentaries on the Law of Corporation*, sec. 5746) "the author does not believe that a case can be found, decided in any of the English courts within the last hundred years, where it was held that land which had been purchased by an incorporated joint-stock business company, for a consideration, reverted, on the dissolution of the corporation, to the grantor or his heirs; or, where the personal property of such corporation, upon the event of its dissolution, was held to escheat to the Crown."

The case I have cited *supra*, from the Supreme Court of the United States, was that of a bank whose charter had been forfeited by the judgment of a court, and Mr. Justice Campbell, continued his discussion of this question of forfeiture, as follows:

"The question is, has the *bona fide* and just creditor of a corporation, dissolved under a judicial sentence for a breach in its charter, any claim upon the corporate property for the

satisfaction of his debts, apart from the reservation in the act of the legislature which directed the prosecution? Can the lands be resumed in disregard of their rights by vendors, who have received a full payment of their price, and executed an absolute conveyance? Can the careless, improvident, or faithless debtor plead the extinction of his debt, or of the creditor's claim, and thus receive protection in his delinquency? The creditor is blameless,—he has not participated in the corporate mismanagement, nor procured the judicial sentence; he has trusted upon visible property acquired by the corporation, in virtue of its legislative sanction. How can the vendors of the lands or the delinquent debtors resist the might of his equity? But, if the claims of the creditor are irresistible, those of the stockholder are not inferior, at least against the parties who claim to hold the corporate property. The money, evidences of debt, lands, and personalty acquired by the corporation were purchased with the capital they lawfully contributed to a legitimate enterprise, conducted under the legislative authority. The enterprise has failed under circumstances, it may well be, which entitled the State to withdraw its special support and encouragement; but the State does not affirm that any cause for the confiscation of the property, or for the infliction of a heavier penalty, has arisen. It is a case, therefore, in which courts of chancery, upon their well settled principles, would aid the parties to realize the property belonging to the corporation, and compel its application to the satisfaction of the demands which legitimately rest upon it,''

It seems to be manifest, therefore, that even if it be conceded that our law courts might sustain the *dictum* of the Superior Court in *Commercial Bank vs. Lockwood's Administrator*, cited *supra*, and hold that the title of the land in dispute either remained in or reverted to the grantor before the passage of the two remedial statutes above cited, yet they could not hold that the grantor took more than the naked legal title, and it would necessarily follow that the Court of Chancery, upon proper application, would be bound to declare the grantor to be merely a trustee for the equitable owner or

owners, and, under proper circumstances, compel a conveyance of the legal title.

The complainant does not contend, however, that its title without the aid of the curative act would be such a title as this Court would compel the respondent to take by decree for specific performance, for it is a self-evident proposition that a Court of Equity will not make a decree for the specific performance of a contract to convey land, at the suit of the vendor, where there is any doubt of the legal sufficiency of the title; a Court of equity is not the forum in which land titles are tried. But if the curative or remedial statutes cited by the complainant are not unconstitutional, there can be no doubt about their efficacy, and no question but that they remove, as the complainant contends, the alleged cloud upon its title.

That being the case, it follows necessarily that this Court is bound to consider the question of their constitutionality; and if it be found that they are clearly constitutional, it also follows that then the complainant is entitled to a decree for the specific performance of the contract set forth in its bill, inasmuch as no other objection is raised by the respondent and no other is discoverable from the case presented.

I do not deem it at all necessary for me, in this connection, to enter into any further discussion of the doctrine of specific performance, because it has been so exhaustively examined by the distinguished Chancellors who have preceded me in this State.

The nature and judicial history of this whole branch of equity jurisprudence, especially with reference to the character of the judicial discretion to be exercised by the Court in administering it, have been examined by Chancellor Bates in the exceptionally able and painstaking opinion delivered by him in *Godwin vs. Collins*, 3 *Del. Ch.* 189—a case affirmed by the Court of Errors and Appeals in a long opinion delivered by Chief Justice Gilpin, whilst the opinion of the Chancellor was quoted by Mr. Justice Field with emphatic approval in *Willard vs. Tayloe*, 8 *Wall.* 566.

Subsequently the subject was further discussed in different aspects by Chancellor Bates in *Crockett vs. Green*, 3 *Del. Ch.* 466; *Satterthwaite vs. Marshall*, 4 *Del. Ch.* 337; *Maxfield vs. Terry*, 4 *Del. Ch.* 618; and also by Chancellor Saulsbury, his distinguished successor, in *Connaway vs. Wright's Admr.*, 5 *Del. Ch.* 472; *McFarland vs. Reeve*, 5 *Del. Ch.* 118; *Diamond State Iron Co. vs. Todd*, 6 *Del. Ch.* 163.

It having been shown that nothing more than a naked legal title, without any color of beneficial interest, could possibly be held by any court to have remained in or have reverted to the grantor of the land, it only remains to consider whether such an interest would be protected by the courts ·from the effects of retrospective legislation—assuming that retrospective legislation is unconstitutional when it affects vested interests or the obligation of contracts.

Retrospective legislation, as a rule, is deemed dangerous and generally reprehensible. In *Dash vs. Van Kleeck*, 7 *Johns.* 477, 505, (decided in 1811) the leading case cited whenever the subject is elaborately discussed, Kent, then Chief Justice of the Supreme Court of the State of New York, said:

"There has not been a distinguished jurist or elementary writer within the last two centuries who has had occasion to take notice of retrospective laws, either civilly or criminally, but has mentioned them with caution, distrust, or disapprobation."

In the same case, page 490, is a quotation from 6 *Bac. Abr.*, 370, 2 *Inst.* 292, "that the rule of the British Parliament is that *nova constitutio futuris formam debet imponere, non preteritis,*"

Kent further says, page 505, "It is not pretended that we have any express constitutional provision on the subject; nor have we any for numerous other rights dear alike to freedom and to justice. An *ex post facto* law, in the strict technical sense of the term, is usually understood to apply to criminal cases, and this is its meaning, when used in the constitution of the United States; yet laws impairing previously acquired civil rights are equally within the reason of that

prohibition, and equally to be condemned.    We have seen that the cases in the English and in the civil law apply to such rights; and we shall find, upon further examination, that there is no distinction in principle, nor any recognized practice, between a law punishing a person criminally, for a past innocent act, or punishing him civilly by divesting him of a lawfully acquired right.    The distinction consists only in the degree of the oppression, and history teaches us that the government which can deliberately violate the one right, soon ceases to regard the other."

Referring to the question of *express* constitutional prohibition, Mr. Justice Washington in *Satterlee vs. Matthewson*, 2 *Pet.* 413, (decided in 1829) says: "The objection, however, which was most pressed upon the court and relied upon by the counsel for the complainant in error, was, that the effect of this act was to divest rights which were vested by the law in Satterlee.

"There is certainly no part of the Constitution of the United States which applies to a state law of this description; nor are we aware of any decision of this or any Circuit Court which has condemned such a law upon this ground: provided its effect be not to impair the obligation of a contract."

Following this, Mr. Justice Story in *Watson and others vs. Mercer*, 8 *Pet.* 109, 110, (decided in 1834) says:

"As to the first point, it is clear, that this Court has no right to pronounce an act of the state legislature void, as contrary to the Constitution of the United States, from the mere fact that it devests antecedent vested rights of property. The Constitution of the United States does not prohibit the states from passing retrospective laws generally; but only *ex post facto* laws.    Now, it has been solemnly settled by this Court, that the phrase, *ex post facto* laws, is not applicable to civil laws, but to penal and criminal laws, which punish no party for acts antecedently done, which were not punishable at all, or not punishable to the extent or in the manner prescribed.    In short, *ex post facto* laws relate to penal and criminal proceedings, which impose punishments or forfeitures, and not to civil proceedings, which affect private rights retro-

spectively. The cases *Calder vs. Bull*, 3 *Dall. R.* 386, 1 *Cond. Rep.* 172; *Fletcher vs. Peck*, 5 *Cranch's R.* 138, 2 *Cond. Rep.* 308; *Ogden vs. Saunders*, 12 *Wheaton's R.* 266; 6 *Cond. Rep.* 523; and *Satterlee vs. Matthewson*, 2 *Peter's R.* 380, fully recognize this doctrine."

Again, Chief Justice Taney in *Charles River Bridge vs. Warren Bridge*, 11 *Pet.* 537, (decided in 1837) says: "It is well settled by the decisions of this Court that a state law may be retrospective in character and may divest vested rights; and yet, not violate the Constitution of the United States, unless it impairs the obligation of a contract," and he then cites and quotes from the cases in the Supreme Court which I have cited above.

Few state constitutions have prohibited the enactment of retrospective laws, *eo nomine*,—certainly not our own— and, therefore, state courts in considering them, whilst invariably expressing the opinion that a statute could "not retrospect so as to take away a vested civil right" have based their arguments upon the fundamental principles which underlie every well ordered civil government, rather than specific constitutional provisions.

It has been said, however, that "the judiciary of a state cannot declare a legislative act unconstitutional, unless it conflict expressly or by implication with some provision of the state or federal constitution," and see 118 *Ind.* 426; and it should be noted that in addition to the protection offered by the older constitutional provisions, the rights of property are at present safeguarded by that clause of the Fourteenth Amendment to the Constitution of the United States, which reads, "Nor shall any state deprive any person of life, liberty or property without due process of law," a clause which has already given rise to a whole library of interpretation.

A multitude of cases have arisen in which the different kinds of retrospective legislation have been defined and classified, and they have been similarly grouped and commented upon by all the conspicuous treatise writers on the subject.

These cases have been abundantly cited and ably re-

viewed by counsel for the complainant in his long and elaborate brief, and it is not open to question that the statutes under consideration clearly belong to a class of retrospective legislation, which has invariably received judicial approval.

As stated by Judge Cooley, "The chief restriction upon this class of cases is, that vested rights must not be disturbed; but in its application as a shield of protection, the term 'vested rights' is not used in any narrow or technical sense, or as importing a power of legal control merely, but rather as implying a vested interest which it is right and equitable that the government should recognize and protect, and of which the individual could not be deprived arbitrarily without injustice."

This proposition is a conservative statement of the rule of construction adopted by the whole line of American decisions upon the subject, and Judge Cooley has collected and reviewed them at length in pages 454–470 (and notes) of his authoritative treatise on *Constitutional Limitations*.

It has already been shown by me, that at the utmost, a mere shadow of naked legal title, never asserted or claimed, was vested in the grantor in consequence of the failure of the Lobdell Car Wheel Company on the one hand to record its charter within the time prescribed by the Legislature, and on the other by the neglect of the complainant, the Diamond State Iron Company, to obtain the re-enactment of its charter for the space of twenty-one days after it had lapsed by limitation of time. This being established, the legislative enactment by which in each case the interests of the owners and creditors of a great industrial corporation were saved from disaster by an act directing that a formality prescribed by statute be complied with *nunc pro tunc*, is surely one of the least objectionable if not one of the most benificent forms which retrospective legislation could assume; and upon no principle ever sanctioned by American Courts could such statutes be held unconstitutional for the reason that they divested such a technical and barren claim of title as that urged by the respondent in this cause to be a "shield of protection."

I have not deemed it necessary to review the numerous cases collected in the brief of counsel for the complainant in support of this proposition, not only because of the unanimity of the authorities upon this point—not a single case, *contra*, having been cited by the respondent's counsel, nor any found by me after diligent research—but also because they have been so exhaustively reviewed by Judge Cooley, as I have stated above, especially in view of the fact that the two statutes under consideration are so far within the line of doubtful or questionable cases that no analysis or discrimination of them is required at my hands.

Having been thus led to the conclusion that whatever cloud may have rested on complainant's title to the land in dispute, by reason of the irregularities set forth in the answer, and quoted above, it nevertheless has been entirely removed by the two remedial statutes which the Legislature had the power to enact, and therefore, there appearing to be no other objection to the enforcement of the contract, I am constrained to grant the relief prayed for in the bill and direct a decree to be entered requiring the respondent to specifically perform his contract for the purchase of the real estate described.

Let a decree be entered accordingly.