MENSCH ET AL.

*v.*

GAIL ET AL.

(Court of Chancery of Delaware.   June 10, 1908.)

*Robert Adair, Hugh Roberts,* and *Jeremiah B. Larzelere, Jr.,* for complainants. *Charles B. Evans* and *J. Harvey Whiteman,* for respondents.

NICHOLSON, Chancellor: The amended bill filed in this cause alleges that the complainants, James G. Mensch, Ella M. Shimer, Allen R. Shimer, Katie M. Mensch, Vinnie O. Mensch and Norristown Trust Company, a corporation of the state of Pennsylvania, testamentary guardian of Rita C. Mensch, minor daughter of P. Calvin Mensch, deceased, being seized in fee of a certain gristmill and tract of land situate in the county of Montgomery and Commonwealth of Pennsylvania, entered into an agreement with Theodore Gail and Letitia Gail, respondents, on or about the 4th day of October, A.D. 1904, with respect to the sale and purchase of said property, and that on or about the 14th day of November, A.D. 1904, "the agreement of sale and purchase was consummated, all parties thereto being present or represented by their respective agents," and that the complainants "at that time signed, sealed, and delivered good and sufficient title deeds to said real estate, which said deeds were duly accepted by the said respondents, and possession of the said real estate was thereupon given to said respondents," and "that the said respondents, having accepted the title deeds to said property, delivered to the complainants a certain check or order drawn on the Security Trust & Safe Deposit Company, a corporation of the state of Delaware, one of the respondents above named, located and doing business in the city of Wilmington, in the said state of Delaware, for the sum of $6,500, being the whole consideration agreed upon for the purchase price of said real estate, which said check or order was signed by Theodore Gail aforesaid, and duly presented for payment at the drawee, the said Security Trust & Safe Deposit Company, and payment thereof was by said drawee refused, and said check or order was protested." It is further alleged that the check is still due and wholly unpaid, and "that at the time it was

given and delivered as aforesaid, and at all times thereafter, the said Theodore Gail had and has sufficient funds on deposit in the hands of the said Security Trust & Safe Deposit Company to pay the full amount of the said check or order for the full amount of said purchase price of $6,500." It is further alleged that the said Theodore Gail, "the maker of said check or order, acting for himself and the other respondents, fraudulently and with the intent to cheat and defraud your orators (the complainants), the vendors, after the giving of the said check as aforesaid and receiving the title deeds and being put into possession of said estate, as hereinbefore set forth, ordered, instructed, and directed the officers of the said Security Trust & Safe Deposit Company to refuse to pay said check or order at the time of presentation or at any time thereafter," and that the said respondents and every one of them have at all times refused, and still refuse, to pay said check. Complainants further allege that, unless restrained by this court, the Security Trust & Safe Deposit Company and the said Theodore Gail and Letitia Gail will proceed to draw out, transfer, and pay out all or part of the moneys thus held by them in trust as aforesaid, and that the complainants will be cheated and defrauded out of their said real estate and the purchase price thereof, and that they have no full, complete, and adequate remedy at law.

The prayers of the bill, in addition to the usual prayers for subpœna, answer, and further relief, are as follows: "(2) That the respondent may be decreed to pay to your orators the said sum of $6,500, together with interest from the day the same should have been paid, to wit, the 14th day of November, A.D. 1904, and the costs of this suit; (3) that the respondents and each of them be restrained by injunction of this honorable court from transferring, paying out, or otherwise distributing the said sums of money on deposit in the names of the said Theodore Gail and Letitia Gail, or either of them, in the hands of the said Security Trust & Safe Deposit Company; (4) that the said Security Trust & Safe Deposit Company, Theodore Gail, and Letitia Gail, any or all of them, may be decreed to hold the said funds as trustees for the vendors of the said real estate, your orators, and may be ordered and directed to pay the

same into this honorable court, and that the court may decree specific performance of the contract for the sale and purchase of said real estate."

Upon presentation of the bill the chancellor ordered that a rule issue directed to said respondents requiring them to show cause why a preliminary injunction should not be granted as prayed for, and granted an order restraining the said Theodore Gail, Letitia Gail, and Security Trust & Safe Deposit Company from transferring, paying out, or otherwise disturbing the said sums of money on deposit in the hands of the said Security Trust & Safe Deposit Company until the further order of the chancellor. No answer was filed, but the motion for a preliminary injunction was heard on bill, affidavits, and exhibits.

The affidavits filed by the respondent allege that no written agreement for the purchase of the said property was ever made by them, or either of them, and deny that the title deeds for the property were ever delivered to them, or either of them, or to their agents, or that possession was given to them, and the said respondent Theodore Gail deposes in an affidavit, as follows: "That he did not accept the title deeds for said property, as alleged in said bill, and that they were never delivered to him or to the said Letitia Gail, or either of them, or any person for him, her, or either of them, but were and are held by the said complainants, or one of them; that after said check for $6,500 had been signed by the said Theodore Gail, and the complainants or some person for them had gotten it in their possession, then they informed your deponent for the first time that the town of Greenville, in the state of Pennsylvania, had the right to take from the dam, belonging to said mill, 100,000 gallons of water each day; that he then demanded that his check which they had obtained from him by fraudulently representing that the title to said water power was good, as aforesaid, be returned to him, and he then and there declined to proceed further, on account of said defect in the title to said water right; that said complainants and those representing them declined and refused to return said check so fraudulently obtained from him, as aforesaid, and that he ordered the Security Trust & Safe Deposit Company, on which said check was drawn, not to

pay the same; that said complainants, or those representing them, did not deliver to the deponent or the said Letitia Gail the title deeds as alleged in the bill, and had not intended so to do, but had informed the deponent, before his check was signed, as aforesaid, that they would hold said title deeds until said check, when delivered, had been paid." A number of affidavits were filed by the complainants in support of the allegations of the bill, and all the letters which passed between the respondent and the agent of the complainants for the sale of the property were also filed as proofs and exhibits.

The motion for a preliminary injunction has been argued twice, and several questions of law concerning the doctrine of specific performance have been argued at great length; the briefs of counsel, particularly at the last hearing, marshaling the authorities bearing upon every part of that branch of equity jurisprudence not already settled by the admirable decisions which have enriched the reports of this court. I have devoted a great deal of time to the careful examination of these questions, and have pursued my investigation beyond even the wide range of authorities discussed by counsel, or contained in their briefs, but their adequate treatment would require an opinion of most unusual length, and at the same time their determination would be futile as subject to the criticism of being obiter dicta, the determination of points not necessary to be determined in the pending motion or cause, unless the facts presented should be held by me to be such as to require their determination. I will therefore proceed at once to the consideration of the affidavits and exhibits, and make a summary statement of the material facts presented at the hearing of the rule, dealing first with those that are undisputed before taking up those that are contradicted.

In the first place, it is not alleged in the bill that an agreement in writing was entered into with Theodore Gail and Letitia Gail, the respondents, although it is urged by one of the counsel for the complainants that the letters of Theodore Gail, when taken in connection with those of Elinor J. Lutes, agent of complainants, constituted an agreement in writing. There is no letter, however, which, either when standing alone or taken in connection with those of the agent of the complainants, contains all the material terms of a contract, and, in

fact, in order to take the case out of the statute of frauds, the complainants rely upon evidence that the contract was executed and the sale was completed by the delivery of the title deeds and possession of the property and the payment of the consideration agreed upon by the check of Theodore Gail, the said respondent, as alleged in the paragraph of the bill from which I have quoted above. The said check of Theodore Gail is also claimed to be an equitable assignment of so much of the fund to his credit in the Trust Company at the time.

The material facts in the case, as presented at the hearing of the rule, which are admitted and not contradicted, are as follows:

The said respondent Theodore Gail, resident in the city of Wilmington, in this state, in consequence of an advertisement appearing in a Philadelphia newspaper, entered into negotiation with a Philadelphia real estate agent, in whose hands the property in dispute was placed for sale by the complainants, and after a great deal of correspondence and a number of interviews, covering a period of several months, during which the said Gail visited the mill property, conversed with the tenant of the mill, and made a personal examination of the premises with a view to purchasing them to be used as a gristmill. One of the complainants, the Norristown Trust Company, guardian of Rita C. Mensch, one of the owners, was employed by Gail to search the title, and on November 11th he was notified by Elinor S. Lutes, the said real estate agent, that she had received the "certificate of settlement of his title insurance" from the said Norristown Trust Company, and he was requested by her to come to Norristown on the following Wednesday and make settlement for the property and receive the deed. On November 14th Gail went to Norristown for that purpose, and at the meeting held for settlement all parties were present or represented, those present including the said James G. Mensch, one of the owners, the said Elinor S. Lutes and F. G. Hobson, now deceased, treasurer and trust officer of the Norristown Trust Company; and when Theodore Gail left the meeting for his home in Wilmington, his check for the full consideration agreed upon, $6,500, was in the hands of the complainants, and the deed for the property in the possession of the Norristown Trust Com-

pany. As soon as Gail reached Wilmington and could get to the Security Trust & Safe Deposit Company, he stopped payment on the check, which the complainants had promptly deposited, and which was protested for nonpayment in due course.

It further appears that in March, 1903, one year and seven months prior to the date of settlement, the owners of the mill property had received the sum of $1,500 as compensation for impairment of their water power, caused by the piping of the water of Perkiomen creek, the source of the water power of the mill, to the borough of East Greenville. A certified copy of all the legal proceedings had in this matter of the impairment of complainants' water power by the borough of East Greenville was presented at the hearing, and discloses the fact that the complainants, James G. Mensch, Ella M. Shimer, Katie M. Mensch, and Vinnie O. Mensch and the said Norristown Trust Company, as executor and trustee under the will of P. Calvin Mensch, filed a petition in the court of common pleas of Montgomery county, Pa., in which they stated that the borough of East Greenville was piping water away from Perkiomen creek at a point about a mile or more above the mill, and alleged that "in consequence of which your petitioners' gristmill is frequently unable to run on account of the insufficiency of water supply furnishing power," and prayed for viewers to be appointed to assess damages. This was done and $2,400 allowed, which on appeal was subsequently reduced to $1,500 by the verdict of a jury. It further appears that the borough of East Greenville is about one mile and a half from the bank of Perkiomen creek, and the water is piped from the bottom of the creek some distance from the shore, so that the piping is not visible. The so-called "certificate of settlement of title insurance" signed by the Norristown Trust Company contains no reference to this impairment of the water power of the mill, and paragraph 10 of the certificate reads as follows: "Note. The insurance under this application will be restricted to the fee of the land only, and will not apply to the machinery or the water right and privileges applicable thereto" —but it appears from the affidavit of the assistant title officer of the Norristown Trust Company, Margaret Potter: "That during the settlement F. G. Hobson, Esq., who was the title officer and trust

officer of the said Norristown Trust Company, informed the said Theodore Gail that Dr. Mensch had received damages from the borough of East Greenville for taking water from the Perkiomen creek about two miles above the Mensch property." She further alleges "that after the said Gail received the said information he did not attempt to repudiate the sale of said property, nor did he request or demand return of his said check." James G. Mensch and Elinor S. Lutes, who were also present at the time, depose to the same effect, whilst Theodore Gail, on the other hand, alleges, as above quoted, that as soon as they imparted to him this information about the right of East Greenville to take water from Perkiomen creek, which was not until they got possession of his check, "he then demanded that his check, which they had obtained from him by fraudulently representing that the title to said water power was good, as aforesaid, be returned to him, and he then and there declined to proceed further, on account of said defect in the title to said water right." There is no denial of the fact, however, that Gail hastened to stop payment of his check before it could reach the Trust Company for collection through the mails. It is alleged in the affidavit filed by the complainant, on the one hand, that the title deeds to the property were put in the possession of the Norristown Trust Company as agent for the respondents Theodore Gail and Letitia Gail; but, on the other hand, it is alleged by the said Theodore Gail that the said complainants, or their representatives, did not deliver to the deponent or the said Letitia Gail the title deeds as alleged in the bill, and had not intended so to do, but had informed the deponent before his check was signed, as aforesaid, that they would hold the title deeds until said check so delivered had been paid.

With regard to the alleged delivery of the deeds, it is uncontradicted, and, in fact, is a matter of record, that the Norristown Trust Company, to whom the deed is alleged to have been delivered as agent for the respondents, was one of the complainants, as guardian of one of the owners of the property, and also one of the petitioners in the proceedings above referred to, which resulted in the recovery of damages for the impairment of the water power of the gristmill, the property in dispute, and the said Trust Company did not have the said deed recorded.

These seem to be the principal facts material to the decision of this motion, and the question at once arises whether upon such facts a court of equity would be justified in decreeing specific performance, or in any way interfering to enforce the agreement. For the purpose of determining that question, I will assume that this court would, under proper circumstances, decree the specific performance, by a vendee resident in this state, of a contract to purchase lands for cash situated in the state of Pennsylvania. I will also assume that the occurrences at the "meeting for settlement" in this cause were such as to take the case out of the statute of frauds, as is contended by the complainant. And I will further assume that no weight is to be given to the contention of the respondents' counsel based upon the lex loci contractus, the law of Pennsylvania. Having made these assumptions provisionally, I will now consider the question stated, in the light most favorable to complainants.

For guidance in the exercise of the jurisdiction of the Court of Chancery to compel specific performance of contracts, it is not necessary to go beyond the former decisions of this court. As was said by the chancellor in *Diamond State Iron Co. v. Husbands,* 8 *Del.Ch.* 205, 223, 68 *Atl.* 240, 245: "The nature and judicial history of this whole branch of equity jurisprudence, especially with reference to the character of the judicial discretion to be exercised by the court in administering it, have been examined by Chancellor Bates in the exceptionally able and painstaking opinion delivered by him in *Godwin v. Collins,* 3 *Del.Ch.* 189, a case affirmed by the Court of Errors and Appeals in a long opinion delivered by Chief Justice Gilpin, whilst the opinion of the chancellor was quoted by Mr. Justice Field with emphatic approval in *Willard v. Tayloe,* 8 Wall. 566 [19 *L.Ed.* 501]. Subsequently the subject was further discussed in different aspects by Chancellor Bates in *Crockett v. Green,* 3 *Del.Ch.* 466, *Satterthwait v. Marshall,* 4 *Del.Ch.* 337, *Maxfield v. Terry,* 4 *Del.Ch.* 618, and also by Chancellor Saulsbury, his distinguished successor, in *Connaway v. Wright's Adm'r,* 5 *Del.Ch.* 472, *McFarland v. Reeve,* 5 *Del.Ch.* 118, *Diamond State Iron Co. v. Todd,* 6 *Del.Ch.* 163 [14 *Atl.* 27]." In *Diamond State Iron Co. v. Husbands, supra,* a bill was filed by the vendor for the purpose of obtaining a decree of this court

compelling the vendee to perform an agreement which he had entered into for the purchase of land, by accepting the deed and giving a purchase-money mortgage therefor, in accordance with the terms of his agreement, and the prayer of the bill was granted; there being no objection made by the respondent to the performance of his contract, except on account of an alleged defect in the title. In *Godwin v. Collins, supra,* the bill was dismissed in the exercise of the judicial discretion of the chancellor on account of the want of fairness in the contract. In that case Chancellor Bates said: "A patient examination of the whole course of decisions on this subject has left with me no doubt that, as a matter of judicial history, such a discretion has always been exercised in administering this branch of equity jurisdiction. It is the established rule that 'a specific performance of a contract of sale is not a matter of course, but rests entirely in the discretion of the court upon a view to all the circumstances.' "

In the pending cause it appears from the evidence already referred to that the respondent, Theodore Gail, seeking to buy a grist-mill in another state, for which he had bargained to pay $6,500, went, or was sent by the complainants' agent, for the purpose of having the title of the property examined, to the Norristown Trust Company, of Norristown, Pa., which was at the same time guardian of one of the owners of the very mill he was seeking to purchase. All the parties concerned were perfectly well aware that the value of the mill to Gail consisted chiefly in its water power. That to him was the essential part of the property, and yet the Norristown Trust Company, one of the complainants, as guardian of one of the owners, undertook to search the title for Gail, and gave him no information of any impairment of the water power until after his check had passed into the possession of the complainants. This omission is emphasized and rendered pregnant by the fact that, not more than two years prior to the meeting had for the purpose of concluding the bargain for the property, the very trust officer who is claimed by the complainants to have been Gail's agent to receive the deed for him, etc., had joined in a petition affirmed to by James G. Mensch, another of the owners of complainants' property, which contains the following allegation: "That since the first taking of water from said stream, the said bor-

ough has greatly increased and is still increasing the quantity of water taken and diverted from said creek, in consequence of which your petitioners' gristmill is frequently unable to run on account of the insufficiency of water supply furnishing power."

This court is not concerned with what would be the effect of the acts and conduct of the parties, as presented by the evidence, in an action at law to recover damages from the respondents for breach of contract, or in a suit on the check of Theodore Gail. The question before it is, Should a court of equity intervene in any way to enforce this contract, when it has before it the fact that the respondent Theodore Gail appeared at the meeting, the occurrences at which are relied upon by complainants to sustain their claim for the intervention of this court, without counsel or adviser other than complainants themselves and their agents, including the officers of the Norristown Trust Company, and that at such meeting the vital fact of the existence of an impairment of the water power, which, according to the language of the petition to which the trust officer of the very company, relied upon by Gail to inform him as to the title, had subscribed, was so serious that the mill was "frequently unable to run on account of the insufficiency of the water supply," was not communicated to Gail until the complainants had obtained his check? Without further reference to, or analysis of, the affidavits submitted on either side, or considering the other points raised on the questions which might be considered by a court of law, I am clearly of opinion that in view of these central facts which appear from the certified copy of proceedings had in Montgomery county, Pa., and from the affidavit of the assistant trust officer, who was present at the meeting, and other affidavits filed by the complainants, this court ought not to exercise its extraordinary jurisdiction to decree specific performance, nor would it hold that a check obtained under such circumstances constituted an equitable assignment of the fund, but that it should leave the complainants to their remedy at law.

The motion for a preliminary injunction is therefore denied, and the restraining order heretofore granted dissolved.

Let the order be entered accordingly.